689 So.2d 416 (1997)
William MYRICK and Iris E. Robinson, Appellants,
v.
LUHRS CORPORATION, etc., et al., Appellees.
No. 95-2626.
District Court of Appeal of Florida, Fifth District.
March 10, 1997.
Jefferson W. Morrow of David & Morrow, P.A., Jacksonville, for Appellants.
Robert E. O'Quinn, Jr., and Pamela S. Lynde of Webb, O'Quinn & Murphree, P.A., Jacksonville, for Appellee.
W. SHARP, Judge.
Myrick appeals from an order of the trial court which dismissed his second amended complaint for failure to state a cause of action in intentional tort. The trial court ruled that the allegations of the amended complaint were insufficient to remove the case from the "exclusivity" provisions of section 440.11 and thus Myrick was limited to his remedies pursuant to the Florida Workers' Compensation Act. We disagree and reverse.
Myrick was injured at work while operating a cut-off saw for his employer, Luhrs. He alleged the following in his second amended complaint:
4) Defendant Luhrs Corporation owned and operated the cut-off saw identified in paragraph 6 below, and maintained the said cut-off saw in such a manner and condition that it was virtually certain that operation of the saw would result in injury to or death of any employee operating it.
* * * * * *
7) At the time the aforesaid cut-off saw was acquired by Defendant Luhrs Corporation, the saw was equipped with various safety devices, to-wit:
a) a work presence sensor which was designed so that the saw could not function unless materials intended to be cut were present on the cutting table of the saw;
b) a double palm button safety interlock which prevented activation of the saw unless both hands of the operator were placed upon the palm buttons, which were situated far enough from the cutting mechanism to preclude contact between the operator's hands and the cutting mechanism;
c) numerous safety warnings, prominently displayed on various surfaces of the saw, advising any operator of *417 those aspects of operation most likely to result in serious injury or death;
d) a safety panel enclosing the inner workings of the saw so as to prevent unintended operation of the saw;
e) a free-swinging saw mechanism, allowing the quick removal of any object brought into contact with the saw blade.
8) It was patent, obvious, and known to any person observing the aforesaid saw that each the [sic] safety devices described in the aforegoing paragraph was essential to the safe operation of the aforesaid saw, and that removal or alteration of any such devices would certainly result in the grievous injury of death of any operator of the aforesaid saw.
9) At all times material hereto, Defendant Luhrs Corporation had full knowledge of the presence, purpose, and necessity of the aforesaid safety devices, and had full knowledge of the aforesaid certain consequences of removal or alteration of those safety devices.
10) Defendant Luhrs Corporation, and/or its employees, after acquiring and installing the aforesaid cut-off saw and prior to July 24, 1990, made certain modifications to the saw, to-wit:
a) removal of the work presence sensor which was present on the saw at the time it was acquired, allowing operation of the saw in the absence of material intended to be cut;
b) removal of the double palm button safety interlock which was present on the saw at the time it was acquired, permitting operation of the saw at times when the operator's hands were exposed to the saw blade;
c) removal and/or obliteration of all safety warnings which were present on the saw at the time it was acquired, depriving operators of the saw of information essential to safe operation of the saw;
d) removal of the safety panel protecting the circuitry and inner workings of the saw, exposing those workings to interference and permitting unintended operation of the saw to [sic]; and
e) installation of pneumatic shock absorbers on the saw mechanism, preventing quick removal of objects brought into contact with the saw.
11) After completion of the aforesaid modifications, the design and layout of the saw were such that it was impossible for any person to perform the tasks required of a saw operator without exposing himself to certain injury from the saw.
12) At all times material hereto, Defendant Luhrs Corporation had full knowledge that the design and layout of the saw were such that it was impossible for any person to perform the tasks required of a saw operator without exposing himself to certain injury from the saw.
13) Grievous injury or death due to such exposure was inevitable, absent the installation and maintenance of safety devices and interlocks to prevent the activation of the saw's cutting mechanism during any time other than moments of intentional operation of the saw, and at all times material hereto, Defendant Luhrs Corporation had full knowledge of this fact.
14) The actions of Defendant Luhrs Corporation and/or its employees in removing, altering, and obliterating the various safety devices and warnings hereinabove described made such injury absolutely inevitable.
15) Defendant Luhrs Corporation committed an international [sic] tort against the Plaintiff by intentionally removing the double palm safety, the free swinging saw mechanism, and the work presence sensor (without the Plaintiff's knowledge) from the chop saw thereby intentionally modifying a safe chop saw into an instrument of destruction. These actions of Luhrs were so reckless that they demonstrate a deliberate attempt to injure the Plaintiff. The Plaintiff had no knowledge or warning he was in danger by using the machine.

*418 16) These actions demonstrate a virtual certainty of injury or death because any employee that cuts teak wood (as the Plaintiff did), on the chop saw without the double palm safety, the free swinging saw mechanism, and work presence sensor would have his hands automatically pulled off the teak wood he was holding by the machine and chopped off. Luhrs did not simply allow its employees to operate unsafe machinery, but rather intentionally changed a safe machine into a machine that chopped off hands.
17) The above alleged facts demonstrate that Defendant Luhrs engaged in intentional conduct which was substantially certain to result in injury or death.
18) On or about July 24, 1990, Plaintiff was injured, while performing tasks as a saw operator with the aforesaid cut-off saw, because of Defendant Luhrs Corporation's removal, alteration, and obliteration of the various safety devices and warnings hereinabove described.
19) As a result of aforesaid actions of Defendant Luhrs Corporation and/or its employees, and the resulting injuries, Plaintiff suffered the amputation of certain of his fingers, physical pain and suffering, mental anguish, loss of the capacity for the enjoyment of life, loss of past and future earning capacity and earnings, and has incurred liability for medical expenses.
The courts have long concluded that intentional acts or torts are not included in the scope of the workers' compensation statute. See generally, Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099 (Fla.1989); Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (Fla.1986); §§ 440.02(1) and (17), Fla. Stat. (1995). A potential basis for liability survives the workers' compensation exclusivity provisions, if an employer has engaged in intentional acts designed to result in, or that are substantially certain to result in the injury or death of an employee. See Eller v. Shova, 630 So.2d 537, 539 (Fla.1993). The injury suffered must be a virtual certainty, not just a strong probability seeming from the employer's actions. Lawton v. Alpine Engineered Products. Inc., 498 So.2d 879 (Fla.1986).
This is a close case. Myrick has alleged that his employer's removal of the various safety devices from the chop saw created a virtual certainty of injury or death to the operator. This is similar to the fact pattern set forth in Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1307 (Fla.1991), where the employer allowed a plane to fly while dangerously over-loaded and with mechanical deficiencies known to the employer, but not to the flight crew. The court ruled that the jury should decide the material question of fact in that case of whether there was a "substantial certainty that eventually the plane was going to succumb to the incessant forces of gravity causing serious injury to, or the death of, those aboard." 568 So.2d at 450, citing Fisher.
Similarly, in Belhomme v. Rigal Plastics, Inc., 625 So.2d 118 (Fla. 5th DCA 1993), this court held that summary judgment was erroneously entered in favor of an employer. We said there was a material issue of fact regarding "whether Rigal's removal of a safety device was substantially certain to result in appellant's injuries." 625 So.2d at 118. In that case, the employer removed only one safety device. Here the complaint alleged the employer removed several.
Further, an underlying element in these cases is that the employer deceived the employee by hiding the dangerous situation created by the employer's actions. In Gustafson's Dairy, Inc. v. Phiel, 681 So.2d 786 (Fla. 1st DCA 1996), the court pointed out that intentional deception and or misrepresentation of danger are at the heart of intentional tort cases permitted to stand in worker's compensation situations. In Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), the employer took six deliberate steps over time, including diverting a smoke stack so that dangerous fumes would flow into the building rather than to the outside. In Connelly, there were misrepresentations made that the aircraft could carry a certain amount of freight, and the employer routinely allowed the aircraft to be overloaded, and *419 misrepresented the overloaded craft's weight.
Reading Myrick's complaint most strongly in his favor as we must do,[1] he alleged his employer deliberately removed or disabled five essential safety devices designed to allow an operator to run the saw without exposing himself to certain danger. Myrick also alleged that he had no knowledge or warning he was being exposed to danger by merely operating the saw. From these allegations, one can infer some cover-up on the part of the employer. Whether Myrick can sustain these allegations with sufficient proofs at a summary judgment or trial, is a different question, not ripe for our consideration.
REVERSED and REMANDED.
GRIFFIN, J., concurs.
THOMPSON, J., dissents with opinion.
THOMPSON, Judge, dissenting.
I agree that this is a close case and that the allegations of the complaint must be read strongly in favor of Myrick. However, I see no distinction between this case and J.B. Coxwell Contracting, Inc. v. Shafer, 663 So.2d 659 (Fla. 5th DCA 1995), rev. denied, 673 So.2d 30 (Fla.1996), Kline v. Rubio, 652 So.2d 964 (Fla. 3d DCA), rev. denied, 660 So.2d 714 (Fla.1995), or Timones v. Excel Industries of Florida, 631 So.2d 331 (Fla. 1st DCA 1994). Divers district courts have repeatedly held that the disabling of or the failure to provide safety devices is not an intentional tort. Although Myrick showed a strong probability of injury or death, his allegations are insufficient to show that his employer either made a deliberate attempt to injure or engaged in conduct which was substantially certain to result in injury or death. See Fisher v. Shenandoah General Const. Co., 498 So.2d 882 (Fla.1986). I dissent.
NOTES
[1] Orlando Sports Stadium, Inc. v. State ex rel Powell, 262 So.2d 881 (Fla.1972); Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla.1961); Thalgott v. Thalgott, 571 So.2d 1368, 1370 (Fla. 1st DCA 1990); Warren v. Monahan Beaches Jewelry Center, Inc., 548 So.2d 870, 872 (Fla. 1st DCA 1989).