Robert Wayne PARKER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 95–SC–0325–MR.

Supreme Court of Kentucky.

Sept. 4, 1997.

Thomas M. Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant.

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Assistant Attorney General, Criminal Appellate Division, Frankfort, for appellee.

## OPINION

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Parker of the murder of his 22–month–old stepson and sentenced him to life in prison. Parker was tried jointly with his wife, the mother of the child victim, who was convicted of complicity in the murder. The stepfather and the mother present separate appeals to this Court.

Robert Wayne Parker raises seven issues on appeal. They are as follows: whether it was error for the trial judge to refuse to give lesser-included offense instructions; whether the instruction defining "intentionally" follows the statutory definition; whether the photographs were inflammatory, irrelevant and repetitious; whether the evidence regarding prior injuries was improper; whether it was error to fail to dismiss the indictment when a grand juror was transferred to the petit jury; whether there was a conflict of interest on the part of counsel in regard to dual representation; whether there was prejudice in regard to the alleged shift in the burden of proof and whether the claim was properly preserved and whether it was error to refuse separate trials.

On December 3, 1993, the 22–month–old stepson of Parker was admitted to the Wayne County Hospital with severe head injuries; bruising on his anterior chest and abdomen and fractured ribs. The doctors diagnosed severe brain injuries and transferred the child to a Louisville hospital where he died two days later. At trial, Parker denied ever hitting the child. He testified that the child was asleep on the couch and that he left him unattended for only a few minutes to stoke the wood furnace. He admitted that he was alone with the child but that he did not know how he received his fatal injuries. Upon conviction of both defendants, the jury fixed a life sentence for Parker. This appeal followed.

I

Parker argues that the trial judge erred when he refused to instruct the jury on lesser-included offenses and that the instructions given misled the jury concerning the specific intent required for the offense of intentional murder. Parker believes that he is entitled to lesser-included offense instructions on second-degree manslaughter and reckless homicide.

We disagree. The trial judge correctly declined to give lesser-included offense instructions because the evidence presented by Parker was a complete denial. If the jury had believed that defense, he would have been exonerated. The difference between the instructions as given and those requested, relate to the respective mental states of the offense as found in KRS 507.020, 507.040 and 507.050.

Lesser-included offense instructions are proper if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense. *Skinner v. Commonwealth,* Ky., 864 S.W.2d 290 (1993). All instructions must be supported by the testimony and evidence presented at trial. *See Lee v. Commonwealth,* Ky., 329 S.W.2d 57 (1959).

The defendant testified that he never disciplined or harmed or hit the child in any way.

This defense does not support the claim by Parker that the injuries resulted from attempts to discipline or scare the child that went awry. On the contrary, the evidence presented by the prosecution supports the singular finding that the defendant acted with the specific intent to cause the child's death. There is no reasonable suggestion that the prosecution evidence supports a finding that the defendant acted with a wanton or reckless mental state.

The medical evidence demonstrated that the child received four blows to his head. Dr. Nichols, who performed the autopsy, testified that one blow was probably delivered by the fist of an adult and another blow was delivered by striking the child's head against a fixed object. The blows caused serious internal brain injury, including bleeding, bruising and swelling. Within moments, the child fell into a fatal coma as indicated by the medical evidence.

██ Proof of intent in a homicide case may be inferred from the character and extent of the victim's injuries. Intent may be inferred from actions because a person is presumed to intend the logical and probable consequences of his conduct and a person's state of mind may be inferred from actions preceding and following the charged offense. *See Davidson v. Commonwealth,* Ky., 340 S.W.2d 243 (1960); *Wilson v. Commonwealth,* Ky., 601 S.W.2d 280 (1980); *Claypoole v. Commonwealth,* Ky., 337 S.W.2d 30 (1960).

██ The medical evidence clearly supports a finding that the defendant acted with the specific intent to cause death. A finding of any other mental state would have been unwarranted. In addition, after discovering that the child had received injuries, Parker did nothing to seek medical assistance for the obvious injuries. It was the mother who took the child to the hospital.

There is no evidence in the record consistent with the theory presented by Parker that the injuries might have been the result of an attempt to discipline or scare the child. Under the circumstances presented, the trial judge correctly refused to instruct on lesser-included offenses.

## II

The argument presented by Parker that the instruction of the trial judge defining "intentionally" was not properly preserved for appellate review pursuant to RCr 9.22. Parker claims that review should be undertaken pursuant to RCr 10.26 which requires a showing of palpable error affecting the substantial rights of the defendant which results in a manifest injustice.

The instructions given by the trial judge are as follows:

A person acts intentionally with respect to a result or a conduct where his conscious objective is to cause that result or to engage in that conduct.

The statutory definition of intentionally is as follows:

A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause that result or to engage in that conduct.

KRS 501.020(1).

██ Here the instructions given by the trial judge substantially follow the statutory pattern. Moreover, the instructions exactly follow the model instructions provided in W.S. Cooper, *Kentucky Instructions to Juries* § 3.01 (Anderson 1993). There was no palpable error or manifest injustice in regard to the instructions given by the Court.

## III

██ It was not reversible error for the trial judge to permit the introduction into evidence of photographs of the autopsy and the hospital photographs. Parker claims that the autopsy photographs and the photographs taken at Kosair Hospital were irrelevant, repetitive and inflammatory. He also believes that the photographs obtained from the records of the Cabinet for Human Resources were not properly authenticated.

We believe there was no abuse of discretion by the trial judge in permitting photographs to be introduced into evidence. The photographs demonstrated the massive character of the internal injuries which were

not evident from external observation and the nature of the external injuries in regard to the time of death as well as the nature and extent of his black eye and facial bruising in the October period prior to the child's death. The photographs were relevant. The photographs supplemented the testimony of Dr. Nichols. The trial judge made a finding that the photographs' probative value outweighed their potential for undue prejudice to the defendant.

The trial judge also reviewed the hospital photographs and determined that those photos which were admitted into evidence supported the opinion by Dr. Smock that the fatal blows to the child were inflicted as distinguished from accidental. The pictures of the older bruises were relevant to show a pattern of intentional injury. We find nothing clearly erroneous in the determination by the trial judge that the admitted photographs were not repetitive or inflammatory.

We do not find that the trial judge abused his discretion in admitting the probative photographic evidence and that the jury was not overwhelmed with repetitive photographs as denounced in *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989).

The fact that the trial judge permitted the introduction into evidence of a CHR photograph of the victim which was unauthenticated was not an abuse of discretion or reversible error. The trial judge admitted the pictures pursuant to KRE 803(6). The photographs showed the black eye and bruising on the victim's face which occurred in October of 1993.

The reason proper authentication is required is so that someone can state that the photograph actually depicts what it is supposed to show. KRE 901(a). In this joint trial, the co-defendant, who is the mother of the victim, testified that the picture was taken on October 11 or 12 of 1993, and that it showed the right eye was black and that his left cheek was bruised. Both defendants acknowledged the injury but claimed that it was accidental and not intentional. Under the circumstances, *Litton v. Commonwealth*, Ky., 597 S.W.2d 616 (1980) is not applicable. The trial judge did not abuse his discretion or commit error.

## IV

It was not error for the trial judge to allow evidence of prior injuries. Parker contends that there was no evidence which linked him to the prior injuries. The trial judge has sufficient discretion to admit evidence of uncharged bad acts if it is relevant, probative and the potential for prejudice does not outweigh the probative value of such evidence. *Bell v. Commonwealth*, Ky., 875 S.W.2d 882 (1994). Evidence of uncharged bad acts is admissible to show the defendant's motive, intent or to demonstrate the absence of mistake or accident. KRE 404(b).

In this case, there is no direct evidence which links Parker to the prior injuries, but the evidence does indicate that during the time in which the child received the prior injuries, he was often in the custody of Parker, although during the daytime he was at a learning center and on weekends he was with his maternal grandparents. Personnel from the learning center and the grandmother testified at trial to the effect that the injuries were not inflicted while the child was in their custody. The victim also spent one night at the Wayne County Hospital for bronchitis. During that visit, nurses discovered that the child's leg was broken and nurses from the hospital testified that it was not inflicted at the hospital.

*Smith v. Commonwealth*, Ky., 904 S.W.2d 220 (1995), as well as *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), support the argument that the probative link between evidence of prior bad acts and a particular defendant does not have to be established by direct evidence. We believe that is the case.

In this case, there was other evidence from which a jury could reasonably infer that Parker was the perpetrator of the prior injuries. The pattern of injuries did not begin until the child moved into the same household with Parker, and when the victim left the custody of the defendant for a few months during the summer of 1993, the pattern of injuries was interrupted until custody was returned to the Parkers. There was

testimony that the child cried excessively when he was in the custody of Parker and seemed to be afraid of him. Under all the circumstances, the jury could reasonably infer that the prior bad acts occurred and that Parker committed such acts. *See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

The trial judge properly determined that the evidence of prior injuries was relevant to demonstrate the animus of Parker towards the child and to show the absence of accident or mistake. The evidence was relevant to explain the motivation to harm the child. In light of the testimony by Parker that he did not know how the child was injured, the possibility of accident or mistake was a proper issue.

## V

Parker claims that a member of grand jury that returned the indictment against him was improperly replaced and that the grand juror was not dismissed for good cause. The trial judge properly transferred the grand juror to the petit jury in this case. The trial judge has discretion to change a grand juror to the petit jury for good cause shown. KRS 29A.230; Administrative Procedures of the Court of Justice Part II, § 26. The juror in question worked for the Cabinet for Human Resources. At the time the juror was transferred to the petit jury, Parker had no assertible interest in having any particular person serve on the grand jury. There is no prejudice to the defendant here because an indictment may be returned by the grand jury without a unanimous vote and there is no evidence that the grand juror in question would have voted against returning an indictment. In any event, it is totally speculative that Parker would have avoided being formally charged. *Cf. Pierce v. Commonwealth*, Ky.App., 902 S.W.2d 837 (1995).

## VI

Parker now complains that counsel for the defendants, both he and his wife, were both assistant public advocates and that defense counsel labored under an actual conflict of interest. We disagree. He executed a waiver of dual representation and a careful examination of the record clearly indicates that the testimony of his wife as co-defendant actually supported his defense and was not antagonistic in any respect.

Early in the trial proceedings, the prosecution moved to disqualify either Robert Parker's counsel or counsel for his co-defendant, his wife. The Commonwealth noted that both attorneys were assistant public advocates and believed there was a potential conflict of interest. At that time, Robert Parker strongly resisted the motion and executed a waiver of conflict. Robert Parker continued in his desire to be represented by an assistant public advocate, even after the trial judge fully advised him of the potential for conflict. Appellate counsel acknowledges that the ineffective assistance argument at this time is not properly preserved for appellate review pursuant to RCr 9.22. He seeks review under RCr 10.26, alleging manifest injustice and palpable error.

SCR 3.130, Rule 1.7, Comment 4, permits the waiver of potential conflicts of interest. Here, the trial judge individually questioned Robert Parker in regard to the conflict of interest question and determined that Robert Parker should be allowed to sign a waiver. *Milsap v. Commonwealth*, Ky.App., 662 S.W.2d 488 (1984), provides for such a waiver upon examination by the trial judge.

All the evidence, defense strategy and tactics clearly indicate that the co-defendant's testimony supported Robert Parker's claim that the child received the October black eye in an accidental fall from a bicycle. The wife testified that she did not see the fall and that nothing looked like a fist that hit the child in the eye. There was no antagonistic defense presented in this joint trial. The trial judge gave Robert Parker exactly what he asked for. There was no palpable error or error of any kind, and there was no manifest injustice.

## VII

Parker argues that the Commonwealth effectively shifted the burden of proof to him based on certain questions asked during cross-examination and by way of improper

closing argument. He claims that he was substantially prejudiced by statements by the prosecution that essentially shifted the burden of proof and invaded the presumption of innocence doctrine. Parker asserts that the prosecution repeatedly argued and elicited testimony that he had failed to provide a suitable explanation for the injuries of the victim. He maintains that the suggestions made by the prosecution and endorsed by the trial judge that a defendant should be required to offer a satisfactory explanation for a result of unknown causation strikes at the very heart of the concept of presumption of innocence and therefore shifts the burden of proof to the defendant to provide his innocence rather than requiring the Commonwealth to prove guilt beyond a reasonable doubt.

■■■ A careful examination of the record indicates that although the prosecution did repeatedly attempt to place the burden of explanation as to how the victim was injured on Parker, his defense counsel just as consistently objected to both the line of questioning and to the prosecutor's comments during closing argument. The trial judge generally sustained the objections of defense counsel and admonished the jury not to consider the questions and/or remarks of the prosecutor.

In regard to a taped recording of a statement given by the grandmother to police which was played for the jury, the defense objected on the ground that one of the questions asked by the police was whether she ever asked the mother for an explanation of the bruises. The trial judge overruled the objection because the defense had not objected to the same question when it was asked on direct examination.

Another incident raised by the defense was during the questioning of a nurse at the hospital who treated the child/victim as to whether she had any personal knowledge about either parent. The defense objected on the grounds that the question was cumulative but the trial court overruled the objection on that basis. The burden of proof claim now presented to this Court is a change in the grounds for the objection. *Cf., Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219 (1976).

The prosecution also introduced the testimony of a detective who investigated the death who attempted to give an explanation for the injuries but the defense objection to the question was sustained before the officer had an opportunity to answer. An admonition or mistrial request was not made, and consequently Parker received all the relief he requested from the trial judge.

Finally, on two occasions during closing arguments, the prosecution stated that Parker had not offered an explanation for the injuries. On both occasions, the objections were sustained.

The trial judge fully instructed the jury that the defendant enjoyed a presumption of innocence and that the jury could only find him guilty if they were satisfied from the evidence alone that beyond a reasonable doubt he was guilty. There was no error.

## VIII

■■■ Parker claims that he was prejudiced by a joint trial with his wife. He asserts that certain evidence of uncharged injuries was admitted against him, but not his co-defendant. The joint trial of the co-defendants was proper. The charges were intimately related and the proof of each charge necessarily overlapped the other. The mere fact that evidence admitted at trial was competent as to one defendant but not the other is not alone sufficient prejudice to require separate trials. *Hoskins v. Commonwealth,* Ky., 374 S.W.2d 839 (1964).

The charges here were closely related and intertwined. Robert Parker was charged with murder and his co-defendant was charged with complicity. All the evidence, with only one exception, was admitted against both of the defendants.

The trial judge repeatedly admonished the jury concerning the evidence admitted against Robert Parker to the effect that it did not amount to a direct finding of fact by the trial judge. In these admonitions, the trial judge specifically left for the jury the decision as to whether the evidence in question, that is the prior injuries, did show the state of mind of Robert Parker, or the ab-

sence of mistake or accident on December 3, 1993.

 The trial judge has the opportunity to exercise sound discretion to joint trials and such a decision will not be set aside in the absence of a showing of prejudice. *Wilson v. Commonwealth,* Ky., 695 S.W.2d 854 (1985). Robert Parker has not demonstrated any undue prejudice as a result of the joint trial. The trial judge did not abuse his discretion in any respect during the conduct of the joint trial. RCr 9.16. There were significant similarities of charges and evidence against both defendants.

The judgment of conviction is affirmed.

All concur.