721 So.2d 372 (1998)
Sandra WILLIAMSON, etc., Appellant,
v.
WATER MANIA, INC., a Florida Corporation, Appellee.
No. 97-3512.
District Court of Appeal of Florida, Fifth District.
October 30, 1998.
Rehearing Denied December 11, 1998.
*373 Eric H. Faddis, of Faddis, Oldham & Smith, P.A., Orlando, for Appellant.
Michael V. Hammond and Henry W. Jewett, II, of Rissman, Weisbert, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellee Water Mania, Inc.
HARRIS, Judge.
Henry Lee Williamson was employed by Water Mania, Inc. in its maintenance department. In the operation of its "wave pool," Water Mania utilized two large machines that by the use of induced draft fans generated the waves necessary for its operation. When the motor on one of these machines failed, Williamson and others were sent into the "wave machine room" to make repairs. Williamson was sucked into the blades of the operating wave machine and killed. In an effort to avoid the workers' compensation consequences of the employer's negligence, plaintiff phrased the complaint as an intentional tort. The trial court found that the pleadings were insufficient to meet the requirements of Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879 (Fla.1986), and dismissed the case.
The supreme court in Lawton (and its companion case, Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (Fla. 1986)) established the following principle:
As we discussed more fully in Fisher, in order for an employer's actions to constitute an intentional tort, the employer must either exhibit a deliberate intent to injure or engage in conduct which is substantially certain to result in injury or death.[1]
In announcing this holding, the court specifically held that it was insufficient to allege that the employer exhibited a willful and wanton disregard for the safety of its employees by ignoring the manufacturer's warnings. Nor is it sufficient to allege that the employer intentionally ignored OSHA standards. This is because the court's majority recognized that the legislature has determined that the remedy under the Florida Workers' Compensation Act, at least in so far as personal injuries caused by negligence are concerned, is the exclusive remedy for employee on-the-job injuries. Without deciding whether an intentional tort exception to the Act should be judicially engrafted, the supreme court majority held that in any event the definition of intentional tort must be narrowly interpreted.
In Fisher, the court cited Prosser in explaining an intentional wrong:
[The] mere knowledge and appreciation of a risksomething short of substantial certaintyis not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.
498 So.2d at 884.
These decisions, as determined by the trial court, control this case unless "intentional tort" is redefined. Do the allegations in the *374 complaint before us demonstrate a deliberate intent by the employer to injure the employee, or does the complaint allege that the employer intended a course of action virtually certain to result in injury or death? The material allegations of the complaint are:
In order to save money and continue generating profits, defendant consciously, purposefully, and intentionally elected to keep Wave machine #2 in operation notwithstanding the lack of safety guards or barricades, while at the same time directing its employees, including Henry Lee Williamson, into the wave machine room to work on Wave machine # 1.
Defendant's conscious decision to remove the safety guards or barricades from the wave machines, defendant's conscious decision to dismantle Wave Machine # 1 while continuing to operate Wave Machine #2, and defendant's conscious decision to direct a team of employees including Williamson to dismantle Wave Machine # 1 made it impossible for Williamson to avoid the induced draft created by Wave Machine # 2, thereby causing Williamson to be involuntarily drawn into the inlet verturri, making death or serious bodily injury by the rotating induced draft impeller blades a virtual certainty.
* * * * * *
Defendant WATER MANIA owned and operated Wave Machine # 1 and Wave Machine # 2, as more particularly described in paragraphs 4, and 5, supra, and maintained the said wave machines in such a manner and condition that it was virtually certain that during operation of the machine while such machine was generating an induced draft created by the rotating, induced draft impeller blades, any employee directed by defendant to be in the immediate vicinity of the machines would be affected, influenced, and/or caught by the induced draft created by the rotating, induced draft impeller blades, thereafter being driven/drawn/sucked towards the rotating impeller blades, thereby being killed or seriously injured by the intentional removal of the safety guards or barricades designed to protect such employee from the impeller blades.
It is thus apparent from these allegations (and other similar paragraphs in the complaint) that the gist of Plaintiff's action is that the employer intentionally removed safety devices from the wind machines and, notwithstanding that the removal of such safety devices violated OSHA standards and created a hazzard, sent Williamson and others into the room to make repairs on one of the machines while insisting, from profit motivation, that the other machine remain in operation. The complaint does not allege that the employer intended the results occasioned. Nor does the complaint allege that the employer knew that making repairs on one machine while the other was in operation, even with the safety devices removed, was virtually certain to cause death or serious bodily injury. Indeed, it appears that other employees were also sent into the room to make the repairs and were not so injured. It is only the act of being in the immediate vicinity of the machine and being involuntarily drawn into the blades of the operating wind machine that the complaint alleges makes death or serious bodily injury virtually certain. There is no allegation that one could not repair one machine without coming into "the immediate vicinity" of the other or that the employer was aware that an employee repairing one machine while the other was in operation was virtually certain to be seriously injured or killed. Thus, as in Fisher, the complaint merely alleges gross negligence and not an intentional tort.
Appellant urges that this court in Myrick v. Luhrs Corp., 689 So.2d 416 (Fla. 5th DCA 1997) amended the Florida Workers' Compensation Act, even if the supreme court did not, by holding that the employer's intentional removal of a machine's safety devices which makes death or injury a virtual certainty if the machine is operated and failure to warn employees of the hazzard is beyond the scope of the Act and justifies an intentional tort action against the employer. Indeed, that is essentially what Myrick holds. We upheld a complaint that alleged that the employer intentionally created a dangerous condition knowing that if the saw was operated in that condition death or serious injury would result to the operator and then instructed *375 his employee to operate the saw without warning him of the danger. It was the "cover up" of the known danger that tipped the scales in this "close" case.
If a property owner sets a trap for an unwary burglar, knowing the burglar will be seriously injured or killed, and the burglar is seriously injured or killed, the property owner will be subjected to criminal prosecution. See Falco v. State, 407 So.2d 203 (Fla.1981). The allegations in Myrick rise to this level except that in Myrick, the "property owner" employed the "burglar" to make the fateful entry. In other words, premeditation is added. If the allegations in Myrick are true, not only should the employer be required to respond in civil damages, it should be indicted. If, however, the allegations are not trueif the allegations were made only to satisfy the requirements of Lawton/Fisher so that a fishing expedition could be conductedthen the consequences of a frivolous action should be considered in order to preserve the integrity of the Workers' Compensation Act.
In Myrick, this court extended the supreme court's decision in Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099 (Fla.1989), which permitted an independent action based on sexual harassment, to permit direct actions for personal injuries against the employer in those cases in which the employer misleads or deceives the employee concerning the safety of equipment. The allegations in this case do not rise to that level. The supreme court in Fisher stated in relation to an intentional tort exception to the Workers' Compensation Act:
In our view the district court should not have addressed the relationship between intentional torts and the Worker's Compensation Act without first answering the threshold question of whether the second amended complaint stated a cause of action for intentional tort. Indeed, had the district court confronted this question directly, we believe the court would not have reached the broader issue of whether intentional torts fall within the purview of the act.
498 So.2d at 883.
In Lawton, again the supreme court intentionally refused to answer the question of whether even an intentional tort was covered by the Workers' Compensation Act. As in Fisher, it limited its inquiry into whether the complaint stated an action for intentional tort and held that it did not. It did not go further and answer the question of what would happen if an intentional tort were in fact alleged. Subsequent supreme court decisions, however, have cited both Fisher and Lawton for the proposition that intentional torts are excluded from the operation of the Workers' Compensation Act. See Eller v. Shova, 630 So.2d 537 (Fla.1993) (When employers properly secure workers' compensation coverage for their employees, employers are provided with immunity from suit from their employees so long as the employer has not engaged in any intentional act designed to result in or that is substantially certain to result in injury or death to the employee). The court seems to have now engrafted the intentional tort exception to the Act. Even so, the standard of alleging an intentional tort has not been changed.
Since we believe that the failure to allege that the employer intended to injure the employee or that it intended to engage in conduct which it knows would subject its employee to virtually certain injury or death, the complaint fails to meet the Lawton/Fisher standard and the trial court was right in dismissing the complaint.
In light of the affirmance of the trial court's dismissal of the direct action for damages against the employer, we agree with plaintiff that the declaratory action under section 440.39(7), Florida Statutes (1997) should be permitted to continue to see if any third persons may be civilly responsible for the loss.
AFFIRMED in part; REVERSED and REMANDED for proceedings under section 440.39(7), Florida Statutes (1997).
WHITEHEAD, R., Associate Judge, concurs.
DAUKSCH, J., dissents, with opinion.
DAUKSCH, Judge, dissenting.
I respectfully dissent.
*376 In my opinion the complaint is sufficient to state a separate tort cause of action; particularly paragraph nine. I would quash the order dismissing the tort complaint and remand for further proceedings.
NOTES
[1] This provision relating to "intent to ... engage in conduct which is substantially certain to result in injury or death" seems analogous to the criminal concept of "intentionally committing an act regardless of human life."