John G. MOORE, Sr. and Sharon Moore, Personal Representatives of the Estate of John G. Moore, Jr., Appellants,

v.

ENVIRONMENTAL CONSTRUCTION CORPORATION, Appellee.

No. 2001–SC–0227–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

Rehearing Denied Nov. 18, 2004.

**14**

W. Douglas Myers, Deatherage, Myers & Haggard, Hopkinsville, Counsel for Appellants, John G. Moore, Sr. and Sharon Moore, Personal Representatives of the Estate of John G. Moore, Jr.

Gregory N. Schabell, Busald, Funk & Zevely, PSC, Florence, Counsel for Amicus Curiae, the Kentucky Academy of Trial Attorneys.

Joe A. Evans, III and Richard L. Frymire, Jr., Frymire, Evans, Peyton, Teague & Cartwright, Madisonville, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

Appellants, John G. Moore, Sr. and Sharon Moore, Personal Representatives of the Estate of John G. Moore, Jr. appeal from an opinion of the Court of Appeals that affirmed the Order Granting Judgment Notwithstanding the Verdict ("JNOV") entered by the trial court.

On September 30, 1999, a Hopkins County jury determined that Appellee, Environmental Construction Corporation ("Environmental") had caused the death of John G. Moore, Jr. through "deliberate intention" when the walls of the trench in which he was working caved in, burying him and causing his death by "compression asphyxia." Upon Environmental's motion, the trial court entered an Order Granting JNOV and stated that from the evidence presented at trial "the only reasoned analysis is that John G. Moore, Jr. did not die as a result of the deliberate intention of the Defendant or its employees." Upon review, the Court of Appeals, "[h]aving thoroughly analyzed the evidence presented in this matter against the standard set for recovery by KRS 342.610(4) and [relevant case law] believe[d] the trial court properly entered JNOV." From a review of the trial proceedings and the evidence presented therein, we hold that the trial court's grant of JNOV was appropriate and therefore affirm.

## II. BACKGROUND

In April of 1996 Environmental won the bid on the contract for a sewer rehabilitation and new sewer project in Dawson Springs, Kentucky. The contract contemplated 120 days for the project, which would involve digging trenches and laying new sewer lines throughout the town, including work in residential areas.

The Occupational Safety and Health Administration ("OSHA") Regulations as enforced by Kentucky provide that for trenches exceeding five feet in depth, employers must take one of three safety precautions to prevent cave-ins: a) sloping the sides of the trench away from the excavation, b) shoring the walls of the trench with hydraulic jacks or timbers, or c) installing a trench box inside the trench in which employees can perform their work.[1] Before leaving headquarters in Lexington, Randy Price ("Price"), the ten-year superintendent for Environmental, made a con-

1. 29 C.F.R 1926.652.

scious decision to leave the shoring jacks and trench box in Lexington. Once work began in Dawson Springs, Price used the sloping or "cutting back" method where the trench exceeded five feet in depth.

At the beginning of July, 1996, Price called on a second crew to help with the trench and pipe laying work. At the request of William Wilson, one of Environmental's officers, Michael Sargent ("Sargent"), who had previously worked for Environmental and had experience in trench work, joined the project and brought along his son Lewis. Price made Sargent the foreman and "competent person"[2] for the second crew based on Sargent's past work for Environmental and Sargent's competent person training certification. At the end of July, Sargent hired his "nephew"[3] John G. Moore, Jr. as an additional second crewmember.

When Sargent and his crew began the trench work on Fredericks Road, Price told Sargent that he would obtain whatever safety devices Sargent thought necessary to do the job right and ensure that no one was injured. Both Price and Sargent classified the soil type in that particular trench as the most cohesive type and the least likely to cause a cave-in and determined that no safety precautions needed to be taken. In the deposition that was read to the jury at trial, Sargent stated that "[he] deemed it safe [him]self or [he] wouldn't have allowed [his] son and [his] nephew or [him]self to get in the hole and work."

Charles Wilson ("Wilson"), who dug the Fredericks Road trench with a backhoe, testified at trial that the trench walls were solid with no cracks or dirt clods falling out. Sargent and his son Lewis both noted that the soil was a hard clay that was hard to dig in some parts and easier in others. Nevertheless, sometime in the late morning or early afternoon of July 30, 1996, Lewis Sargent exited the trench in which he and John, Jr. were working; Sargent replaced his son in the trench because John, Jr. was bent over the sewer pipe preparing it for the next piece and Sargent did not like to leave a worker in a trench alone. Suddenly, a nine-foot long portion of the trench wall collapsed onto John Moore, Jr.'s back. Sargent then tried to dig his nephew out with his bare hands, but the backhoe operator warned him to get out of the trench because it was about to collapse again. Sargent escaped the second cave-in and the crewmembers began digging out John, Jr. Their attempts were in vain because the collapsed trench wall had buried and suffocated him almost instantly.

After John, Jr.'s body was recovered, Price had the trench filled in because it was located near a street in a residential area. Work on the project was halted for two days. Once work resumed, Steve Rogers ("Rogers"), a Kentucky OSHA inspector, was called to the site to investigate. Although Rogers could not investigate the trench because it had been filled in, he noted that the decision to fill in the trench was reasonable given that it was in a residential area. Rogers talked to Price and two other employees who were work-

---

**2.** "Competent person means one who is capable of identifying existing and predictable hazards in the surroundings, or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures." 29 C.F.R.1926.650(a).

**3.** John G. Moore, Jr. was the stepson of Sargent's sister-in-law; however, John, Jr. had lived with Sargent and his son Lewis for approximately eight months and Lewis commonly referred to John, Jr. as his cousin and Sargent commonly referred to him as his nephew.

ing the day of John, Jr.'s death and issued four serious citations.[4] Rogers stated that all his citations were based on facts that Price had relayed to him and he noted that Price appeared forthcoming and truthful. At trial, Rogers testified that he saw no evidence to indicate that Environmental had a deliberate intention to injure or kill John G. Moore, Jr.

At trial, all parties involved recognized the safety precautions for trench work and acknowledged a risk of injury or death from failure to take the proper precautionary measures.[5] The Appellants believe that Environmental's failure to take the proper precautions constituted a deliberate intention to kill their son, such that the exclusivity provisions of the Workers' Compensation Act would not apply:

> If injury or death results to an employee through the deliberate intention of his employer to produce such injury or death, the employee or his dependents may take under this chapter, or in lieu thereof, have a cause of action at law against the employer as if this chapter had not been passed, for such damage so sustained by the employee, his dependents or personal representatives as is recoverable at law.[6]

Although the jury's verdict confirmed the Appellants' position, the trial judge determined that the safety violations did not amount to a deliberate intent on the part of Environmental to bring about the death of John G. Moore, Jr. and entered a JNOV for Appellee.

## III. ANALYSIS

■ Upon review of the Order Granting JNOV, we must examine the trial court's decision under the clearly erroneous standard.[7] That is to say, we must review all the evidence presented to the jury and must uphold the trial court's decision if "after all the evidence is construed most favorably to the verdict winner, a finding in his favor would not be made by a reasonable [person]." [8]

As provided in *Fryman v. Electric Steam Radiator Corp.*,[9] " 'deliberate intention' [has been interpreted to mean] that the employer must have determined to injure an employee and used some means appropriate to that end, and there must be specific intent." [10] " 'The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be character-

---

**4.** The citations were for not reporting the accident to the Kentucky OSHA regulatory agency within eight hours of the event; for failing to provide a ladder to escape the trench; for failure to have a competent person conduct daily inspection of trench; and for not taking adequate safety precautions for a trench over five feet deep, i.e., sloping, shoring or installing a trench box.

**5.** The exception was Sargent, who stated in his deposition that at the time he took the competent person training no precautionary measures were required to be taken in soil that was classified as Type A, i.e., the most cohesive.

**6.** KRS 342.610(4).

**7.** *Crest Coal Co. v. Bailey*, Ky., 602 S.W.2d 425 (1980).

**8.** *First and Farmers Bank of Somerset v. Henderson*, Ky.App., 763 S.W.2d 137, (1988); *Brewer v. Hillard*, Ky.App., 15 S.W.3d 1, 9 (1999); *Taylor v. Kennedy*, Ky.App., 700 S.W.2d 415, 416 (1985)(where a motion for judgment notwithstanding the verdict should not be granted unless "no disputed issue of fact exists upon which reasonable men could differ").

**9.** Ky., 277 S.W.2d 25 (1955).

**10.** *Id.* at 27.

ized as reckless or wanton, but it is not an intentional wrong.' " [11]

The United States District Court for the Eastern District of Kentucky recently encountered the exception to the exclusivity provision of the Kentucky Workers' Compensation Act and determined that without evidence that the employers acted to harm employees, evidence that the employers knew that employees would be exposed to chemicals that caused cancer but did not take measures to reduce or alleviate risks, was insufficient to give rise to a tort cause of action under the deliberate intention exception to the exclusivity provision of Kentucky's Workers' Compensation Act.[12]

In Tennessee, where a deliberate intention must also be established to avoid the exclusivity of the Workers' Compensation Act, evidence of an employer's failure to follow safety regulations and a history of disregarding safety regulations [13] or permitting dangerous working conditions [14] has been found insufficient to establish that an employer had actual intent to injure an employee. Many other states in which Workers' Compensation exclusivity is abrogated when the employer intentionally causes injury or death, have concluded that violations of OSHA regulations or other safety standards alone do not rise to the level of an intentional wrong necessary to overcome the Workers' Compensation exclusivity provisions [15] because mere knowl-

**11.** *Williamson v. Water Mania, Inc.*, 721 So.2d 372, 373 (Fla.Dist.Ct.App.1998)(citing *Fisher v. Shenandoah General Constr. Co.*, 498 So.2d 882, 884 (Fla.1986)(quoting WILLIAM PROSSER & W. PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS 36 (5th ed.1984))).

**12.** *Blanton v. Cooper Indus., Inc.*, 99 F.Supp.2d 797 (E.D.Ky.2000).

**13.** *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42 (Tenn.App.1993) (where employee, who was injured while using explosives during excavation job, alleged that employer failed to follow applicable safety regulations during employee's work, that employer had history of disregarding safety regulations concerning use of explosives, and that all personnel assigned to project, including foreman, were untrained in use of explosives).

**14.** *Mize v. Conagra, Inc.*, 734 S.W.2d 334 (Tenn.App.1987) (where personal representatives of employees killed in explosion at manufacturing plant were not entitled to maintain wrongful death action against employer, notwithstanding that explosion resulted from accumulation of grain dust and inadequate ventilation caused by employer's knowing violation of safety regulations, since knowingly permitting dangerous working conditions to exist and violation of safety regulations was not sufficient conduct to establish intentional injury exception to the Workers' Compensation Act).

**15.** *Estate of Richard by Cunningham v. American Wrecking Corp.*, 134 F.Supp.2d 252 (D.Conn.2001) (where fatal injuries to demolition worker who was cutting steel beams were not intentionally caused by employers, even though OSHA violations may have been described as negligent, grossly negligent, and even willful actions on part of employers); *Allen v. Southwest Salt Co.*, 149 Ariz. 368, 718 P.2d 1021 (Ct.App.1986) (where gross negligence in maintaining hazardous workplace and in failing to make safety modifications on harvester did not show a deliberate intent to inflict injury on employee who was injured by harvester); *Serna v. Statewide Contractors, Inc.*, 6 Ariz.App. 12, 429 P.2d 504 (Ct.App. 1967) (where employer's conduct did not amount to willful misconduct sufficient to take the action out of the Workers' Compensation Act when employer disregarded repeated warnings by state safety inspectors regarding twenty-five foot deep trench, knew that previous cave-in had occurred, had instructed decedents that in the event of a cave-in they were to try to crawl inside a sewer pipe in the ditch and wait until they were dug out, and at the time of the fatal occurrence, the decedents tried but failed to reach the pipe); *Ramos v. Town of Branford*, 63 Conn. App. 671, 778 A.2d 972 (2001) (where absent evidence that town's and marshal's alleged violations of safety regulations were committed with conscious and deliberate intent directed to purpose of inflicting injury, action brought against town and town's fire marshal by the estate of deceased volunteer firefighter,

edge and appreciation of the risk involved in an act is not the same as the intent to cause the injury.[16] Mere carelessness or negligence, however gross, wanton or reckless, does not establish such intent.[17]

■ From a review of the trial proceedings and the evidence presented therein, we determine that the trial court's grant of JNOV was appropriate, as "it is the duty of the court to set aside a jury verdict which imposes liability upon sympathetic considerations, where fault is not shown."[18]

The evidence presented at trial, taken in the light most favorable to the Appellants, shows that since the trench was over five feet deep Environmental failed to comply with Kentucky OSHA regulations regarding safety precautions for trench work by not sufficiently sloping the trench, shoring the trench walls, or installing a trench box. Environmental failed to provide the proper means of escape from the trench and failed to report John G. Moore, Jr.'s death to Kentucky OSHA officials within the required eight hours. Environmental also failed to have a competent person perform daily inspections of the site.[19] Environmental knew that injury or death could result from a failure to take the proper precautions. Nevertheless, Environmental's violation of OSHA regulations and acknowledgement of the possible conse-

---

alleging that town and its fire marshal violated various safety standards was barred by exclusivity provision of Workers' Compensation Act); *Greene v. Metals Selling Corp.*, 3 Conn.App. 40, 484 A.2d 478 (1984) (where allegations of willful and wanton violations of federal Occupational Safety and Health Act and its state counterparts were insufficient to support widow's common law action for wrongful death of her husband); *Hatcher v. Bullard Co.*, 39 Conn.Supp. 250, 477 A.2d 1035 (1984) (where there was no allegation that employer intended or that conduct was calculated to injure decedent, allegations that employer intentionally, wantonly and willfully violated OSHA regulations resulting in death of decedent were insufficient to allow widow's common law tort action to overcome exclusive remedy of Workers' Compensation Act); *Subileau v. Southern Forming*, 664 So.2d 11 (Fla.Dist.Ct.App.1995) (where even though employer knew of past injuries to workers from falls from elevated worksites, employer had been cited by OSHA several times for failure to provide guardrails, and employer failed to erect guardrails at construction site, employer's actions did not render death of construction worker in fall intentional); *Boyer v. Louisville Ladder Co.*, 157 Mich.App. 716, 403 N.W.2d 210 (1987), *appeal denied*, 428 Mich. 905 (1987) (where employer's failure to provide safety cable to worker, who was injured when scaffolding on which he was working fell, was not within intentional-tort exception notwithstanding allegation that employer's failure to provide cable was willful, intentional, and with knowledge that injury was substantially certain to follow, since worker failed to show that employer intentionally caused scaffolding to fall; mere knowledge and appreciation of risk involved in act is not same as intent to cause injury); *DeLane ex rel. DeLane v. City of Newark*, 343 N.J.Super. 225, 778 A.2d 511 (Ct.App.Div. 2001) (where city's employees' violations of laws governing electrical hazards, failure to inform firefighters of law regarding proximity limitations to high voltage wires, and violations of safety statutes, albeit reckless, did not rise to "intentional wrong" necessary to overcome exclusivity provisions of Workers' Compensation statutes).

**16.** *Boyer*, 157 Mich.App. 716, 403 N.W.2d 210.

**17.** *McCray v. Davis H. Elliott Co.*, Ky., 419 S.W.2d 542 (1967); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir. 1999); *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 155 P. 703 (1916); *Winterroth v. Meats, Inc.*, 10 Wash.App. 7, 516 P.2d 522 (1973).

**18.** *Brothers v. Cash*, Ky., 332 S.W.2d 653, 655 (1959).

**19.** For purposes of this review, we assume that Sargent was not a competent person. However, Steve Rogers testified that had he been shown Sargent's competent person certification, he would have withdrawn the corresponding OSHA violation.

quences does not amount to a deliberate intention to produce John G. Moore, Jr.'s death.[20]

Appellants' reliance on the inferred intent approach in homicide cases is misplaced as the actions of defendants in such homicide cases involve intentional action directed toward the victim. In the case of *Parker v. Commonwealth,*[21] on which Appellants rely, the actions of the defendant involved one blow to his 22 month-old stepson's head with his fist and other blows to the child's head by striking it against a fixed object.[22] There, the defendant's intent could be inferred because of the direct action he took and the extent of the victim's injuries. Had the blows to the child's head been an accident they would not have been so numerous or severe. In *Hudson v. Commonwealth,*[23] the defendant strangled his girlfriend to death, bound and gagged her and left her body in the trunk of a car. In *Stopher v. Commonwealth,*[24] the defendant killed a sheriff's deputy by shooting him in the face and in *Smith v. Commonwealth,*[25] the defendant shot an acquaintance at point blank range. The intentional and vicious actions by the defendants in each of these cases eliminated the possibility that the deaths were caused by accident and justified the inferred intent approach. Absent actions of the same nature, this approach cannot be used to infer deliberate intent under KRS 342.610(4).

In rejecting the plaintiff's argument that "constructive intent" would satisfy the requirement necessary for "wilful misconduct" under Arizona's exception statute, the court in *Serna v. Statewide Contractors, Inc.,*[26] stated that the statute required that there be a "deliberate" intention as distinguished from some kind of intention presumed from gross negligence. Affirming a summary judgment in favor of the defendant, the court concluded that there had been a failure to establish that the employer had acted with the intent required by the statute.[27]

■ "It must be remembered that it's not the depravity of the employer's conduct that is being tested, but the narrow issue of the intentional versus the accidental quality of the precise injury."[28] There-

---

20. Although we do not adopt the substantial certainty test, because the intentional-harm exception to the exclusive remedy of Workers' Compensation requires actual intent to harm and intent grounded on the theory of substantial certainty would not bring a claim within the exception, it should be noted that even under that test, Environmental's actions do not constitute deliberate intention. *Peay v. U.S. Silica Co.,* 313 S.C. 91, 437 S.E.2d 64 (1993). In *Dunleavy v. Yates Constr. Co.,* 114 N.C.App. 196, 442 S.E.2d 53 (1994) where an employee was killed from a partial cave-in of an excavated trench, the appellate court determined that the trial court's summary judgment in favor of the defendant construction company was proper although the company disregarded safety rules for trenches deeper than five feet and allowed the employee to work without hard hat, because a disregard of safety rules was at most negligent and inadvertent, and thus did not rise to the level of intentionally doing something that was sub-

stantially certain to result in an accident that would kill an employee.

21. Ky., 952 S.W.2d 209 (1997).

22. *Id.* at 212.

23. Ky., 979 S.W.2d 106 (1998).

24. Ky., 57 S.W.3d 787 (2001).

25. Ky., 737 S.W.2d 683 (1987).

26. 6 Ariz.App. 12, 429 P.2d 504 (1967).

27. *Serna v. Statewide Contractors, Inc.,* 6 Ariz. App. 12, 429 P.2d 504 (1967).

28. *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 246 S.E.2d 907, 922 n. 3 (1978) (Neely, J., dissenting), *superseded by statute as recognized by Handley v. Union Carbide Corp.,* 804 F.2d 265 (4th Cir.1986).

fore, a "[v]iolation of a safety statute [a]lone does not constitute intentional injury," and neither does "failure to follow recommended procedures or to take standard precautions."[29] "[T]o say that a safety statute was violated is only to say that an employer has failed to use reasonable care."[30]

In the case *sub judice,* the Appellee's actions involved a failure to follow safety regulations. Although Environmental was cited for serious Kentucky OSHA violations, from the evidence presented to the jury, viewed in a light most favorable to the Appellants, there is no indication that Environmental's failure was done with the deliberate intention to produce John Moore, Jr.'s death. Without more, Environmental's violation of Kentucky OSHA regulations does not amount to the deliberate intention necessary to pursue remedies outside of the Workers' Compensation Act.

## IV. CONCLUSION

For the above reasons, we affirm the Court of Appeals.

COOPER, JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion in which GRAVES and STUMBO, JJ., join.

LAMBERT, Chief Justice, dissenting.

I respectfully dissent from the majority opinion that affirms the trial court's grant of the judgment notwithstanding the verdict ("JNOV") in favor of Appellee, Environmental Construction Corporation. The trial court overturned the jury award of damages in favor of Appellants, Sharon and John Moore, Sr., for the wrongful death of their son, John Moore, Jr. The majority held that "the trial court's grant of JNOV was appropriate, as 'it is the duty of the court to set aside a jury verdict which imposes liability upon sympathetic considerations, where fault is not shown.'"[1] I believe that Appellants presented more than sympathy; that their evidence was sufficient for the jury to reasonably find that Appellee acted with deliberate intent to bring about the death of the decedent.

The evidence presented at trial revealed deliberate actions on the part of Appellee in forcing its employees, including the deceased Mr. Moore, to work in a manifestly unsafe environment. Appellee purposefully did not provide safe working conditions for the digging of the trench. It refused to install a trench box or adequately slope the sides of the trench. Kentucky OSHA standards require safety precautions when trenches are over five feet deep, and the trench in question was at least seven feet deep. These actions by Appellee were intentional and fully supported the jury finding of liability against Environmental.

At trial, management personnel of Environmental admitted that Appellee knew of the dangers, hazardous conditions, and potential consequences associated with placing Mr. Moore in an unsafe trench. The testimony also revealed that Appellee knew that cave-in of the trench was likely and that anyone in the trench at the time of the cave-in would be seriously injured or even killed as a result. Furthermore, testimony disclosed that Appellee had knowl-

---

**29.** *Mandolidis,* 246 S.E.2d at 922, 923 (Neely, J., dissenting).

**30.** *Id.* at 923.

**1.** *Moore v. Environmental Construction Corp.,* Ky., 147 S.W.3d 13, 17–18, 2004 WL 1906172, *3, *5 (2004) (majority opinion), *quoting Boyer v. Louisville Ladder Co.,* 157 Mich.App. 716, 403 N.W.2d 210 (1987).

edge of specific risk factors that greatly increased the likelihood of a cave-in: 1) an exposed gas line, 2) vibrations from an adjacent highway, and 3) unstable soil. Even with all of these known risks and probabilities of death or serious injury, Appellee ordered the decedent to work in the trench. The evidence also showed that Appellee failed to report the decedent's death in a timely manner, even though it knew that the death was the result of its actions.

Upon review of a JNOV motion, the court must "consider the evidence in a light most favorable to the party opposing the motion and to give that party every reasonable inference that can be drawn from the record."[2] Additionally, the motion should not be granted "unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable [persons] could differ."[3] It is erroneous to declare that the death of Mr. Moore was caused by Appellee's omissions, because the decedent's death was the direct result of Appellee's deliberate and intentional act of ordering him to work in death-probable conditions. Moreover, the jury was entitled to infer intent based upon Appellee's actions following the incident. Its failure to report the decedent's death and filling the trench subsequent to the removal of the body, Appellee impeded or prevented inspectors from fully investigating the incident. The evidence and allowable inferences were sufficient to create a material issue of fact as to whether Appellants met their burden of proving deliberate intent to cause death.

Kentucky is not alone in having an exception to the exclusive remedy provision of the Workers' Compensation Act and allowing recovery for injuries as a result of intentional or deliberate actions by the employer. Some other jurisdictions use a substantial certainty test. The majority opinion relies on *Dunleavy v. Yates Constr. Co.*[4] for the proposition that Environmental's actions did not meet the substantial certainty test.

In *Dunleavy*, the North Carolina Court of Appeals held that summary judgment granted by the trial court to the defendants was proper, because the plaintiff had failed to produce sufficient evidence to support a finding under the exception in *Woodson v. Rowland.*[5] In *Dunleavy*, the trench did not exceed five feet deep in all areas of the trench. For this reason, the company did not supply a trench box. In spite of what appeared to be stable soil, there was a partial cave-in and an employee was killed. The court distinguished these facts from the situation in *Woodson* where the high court of North Carolina recognized a narrow exception based on egregious facts. The facts included several safety citations, showed required work in a fourteen-foot deep trench, and showed the failure to provide any safety precautions. The Supreme Court of North Carolina recently described the *Woodson* exception as one that "applies only in the most egregious cases of employer misconduct" and where "there is uncontroverted evidence of the employer's intentional misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death."[6]

**2.** *Brewer v. Hillard*, Ky.App., 15 S.W.3d 1, 9 (1999).

**3.** *Taylor v. Kennedy*, Ky.App., 700 S.W.2d 415, 416 (1985).

**4.** 114 N.C.App. 196, 442 S.E.2d 53 (1994).

**5.** 329 N.C. 330, 407 S.E.2d 222 (1991).

**6.** *Whitaker v. Town of Scotland Neck*, 597 S.E.2d 665, 668, 357 N.C. 552 (2003).

We hold that when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury of death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

\* \* \*

This discussion in *Pleasant* [*v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985)] makes clear that an actual intent to cause injury is not a necessary element of an intentional tort generally, nor is it required for intentional tort claims based on work-related injuries.[7]

The facts of the present case are disturbingly similar to those in *Woodson v. Rowland*.[8] Here the employer knew that the trench depth required safety precautions due to the likelihood of cave-in, but the employer deliberately did not make available or use a trench box. Rather the employer left all safety equipment behind instead of taking it to the work site. As in the *Woodson* case, the deceased employee was forced to work under manifestly unsafe conditions. Further, it appears from the testimony and other evidence that it was substantially certain that a serious injury or death would occur as a result of the actions by Environmental.

KRS 342.610(4) allows recovery outside of the exclusive remedy provision of the Workers' Compensation Act upon a showing of intent. The legislature has not eliminated liability when employers act egregiously and cause the death or serious injury of employees. But, this Court has effectively immunized employers from payment of damages despite egregious behavior by a draconian construction of the statute. Instead of analyzing this case as a civil action for damages and allowing the jury to draw proper inferences, the majority has held Appellants to a standard that would be appropriate for a homicide prosecution.

For the reasons stated herein, I would reverse the trial court's grant of JNOV and reinstate the jury verdict.

GRAVES and STUMBO, JJ., join this dissenting opinion.

---

**7.** *Woodson*, at 340–42, 407 S.E.2d 222.

