THE ESTATE OF Percy L. RICHARD, by its Executrix Patricia CUNNINGHAM, Percy D. Richard, by his next friend Patricia Cunningham, and Percy M. Richard, Plaintiffs,

v.

AMERICAN WRECKING CORP., Idm Environmental Corp., Seco Corp., United Illuminating, Corp., Atlantic Environmental Services, Inc., and John Doe, Defendants

No. CIV. A. 3:98 CV409(CFD).

United States District Court, D. Connecticut.

March 9, 2001.

John C. Heffernan, Jr., Heffernan, Farr, McChord & Morelli, Hartford, CT, Jerry L. Peteet, Gary, IN, Gregory A. Adamski, Karen Conti, Adamski & Conti, Chicago, IL, for Plaintiffs.

Richard J. Kenny, Bernard F. Gaffney, Rome McGuigan Sabanosh, Hartford, CT, Michael A. Cerussi, Jr., Thomas F. Cerussi, Cerussi & Spring, Greenwich, CT, Jodi M. Thomas, Jennifer J. Weitz–Clancy, Rome McGuigan Sabanosh, Hartford, CT, John I. Lisowski, Morgan, Melhuish, Monagham, Arvidson, Abrutyn & Lisowski, Livingston, NJ, Richard A. Roberts, Jason M. Lipsky, Nuzzo & Roberts, Cheshire, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS SECO CORP. AND AMERICAN WRECKING CORP.

DRONEY, District Judge.

This case arises out of the death of Percy L. Richard, a demolition technician who was killed while working on a demolition project at the Steel Point Generating Station ("Steel Point") in Bridgeport, Connecticut. The plaintiff is Mr. Richard's estate through its executrix (his widow), who initially brought this action against several entities involved with the project.

Following the dismissal of certain counts and parties, the remaining count of the complaint is the estate's common law claim for wrongful death directed at Seco Corporation ("Seco"), American Wrecking Corporation ("American Wrecking"), IDM Environmental Corporation ("IDM"), and John Doe.[1] Pending is a motion for summary judgment filed by defendants Seco and American Wrecking [Doc. # 106].[2] For the following reasons, the defendants' motion is GRANTED.

### I. Background [3]

The relationships among the parties involved in this lawsuit are complicated, but generally undisputed. United Illuminating, which owned several of the buildings at Steel Point, hired IDM to demolish some of these structures. IDM hired At-

---

1. According to the third amended complaint, which is the operative complaint, "John Doe" is the contractor who originally erected the buildings at Steel Point. The other two original defendants, United Illuminating and Atlantic Environmental Services, Inc., already have been dismissed from this action.

2. On September 11, 2000, after the Court granted an extension of time, plaintiff filed an Answer to Defendant's Motion for Summary Judgment [Doc. # 115] and Brief in Opposition to Motion for Summary Judgment [Doc. # 114]. Although the plaintiff's "Answer" indicated that it requests that the Court to deny the defendants' motion for summary judgment "[p]ursuant to Federal Rule of Civil Procedure Rule 56 and Local Rule 9(c)1," none of the plaintiff's filings complied with Local Rule 9(c)(2), which requires that papers opposing a motion for summary judgment include a document that states "in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 9(c)(1) Statement whether each of the facts asserted by the moving party is admitted or denied." In general, failure to submit a proper Local Rule 9(c)(2) statement will result in the Court deeming admitted those statements contained in the moving party's Local Rule 9(c)(1) statement. See D. Conn. L. Civ. Pro. 9(c)(1). Nevertheless, the Court will not do so and will consider the arguments made in the plaintiff's brief as denials of the statements contained in the moving party's Local Rule 9(c)(1) statement.

3. The recited facts are taken from the parties' memoranda and attached materials. They are undisputed unless otherwise noted.

lantic Environmental Services, Inc. ("Atlantic") to supervise the demolition, and it also sought bids for the actual demolition work. American Wrecking responded and IDM accepted its bid. Their agreement was memorialized in a contract on May 25, 1995.

American Wrecking is a corporation wholly owned by William D. Spector of Perth Amboy, New Jersey. According to Spector, American Wrecking served as the "contracting arm" of a joint venture or partnership with Seco, another corporation owned by him. *See* Spector Aff. ¶¶ 3–5. Spector further states in his affidavit that Seco purchased and leased equipment used by American Wrecking in its demolition work, administered salaries and benefits for employees of both corporations, and managed American Wrecking's post-demolition salvage operations. *See id.*

The decedent was a foreman at the Steel Point site. The moving defendants here claim that he was employed by a Seco–American Wrecking joint venture, while the plaintiff argues that he worked solely for Seco. On February 27, 1996, the decedent attempted to make several cuts in horizontal steel beams that were supporting the brick facade of one of the buildings at Steel Point. Before doing so, he consulted with his supervisor, Frank Bartolotti, and according to the defendants (and Bartolotti's affidavit), the two together decided that it was safe to make the cuts. However, when the decedent cut into the beams, they collapsed and the brick structure fell on him. He died as a result of his injuries. At the time of this incident, American Wrecking held a worker's compensation insurance policy which covered the decedent and has provided benefits to his estate.

In their motion to dismiss, Seco and American Wrecking argue that summary judgment should be granted because the wrongful death claim is barred by the exclusivity provision of the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31–284 (the "Act"). They contend that the Act's bar against most common law tort claims applies in this case because (1) both were the decedent's employer within the meaning of the Act and thus entitled to its prohibition against suits such as this; (2) the decedent was an employee within the meaning of the Act; and (3) the claim for wrongful death is not excepted from the Act. The plaintiff argues that the exclusivity provision does not apply because (1) even if the decedent was an "employee" under the Act, his "employer" was Seco, not American Wrecking; (2) the decedent was not an employee but rather an independent contractor; and (3) the defendants' actions were willful and intentional, and thus excepted by the Act.[4]

## II *Standard of Review*

 In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ...." *Miner v. City of Glens Falls*, 999

---

4. The plaintiff apparently concedes that the exclusivity provision applies to Seco. The plaintiff maintains, however, that the intentional tort exception should apply to both defendants and that the decedent was an independent contractor of both Seco and American Wrecking.

F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. *Discussion*

#### A. The Workers' Compensation Act and its Applicability

#### 1. Relevant Law

■ "The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." *Mingachos v. CBS, Inc.*, 196 Conn. 91, 491 A.2d 368, 373 (1985) (quoting *Jett v. Dunlap*, 179 Conn. 215, 425 A.2d 1263, 1264 (1979)). The Act prevents employees from bringing common law tort claims against their employers for injuries arising from their employment, but it allows employees to receive "relatively quick and certain compensation" for their injuries. *Id.* More specifically, the Act provides that,

> An employer who complies with the requirements of subsection(b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained. . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter.

Conn. Gen.Stat. § 31–284(a).[5]

■ Under the Act, a number of entities may qualify as an "employer," which is defined in part as "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay. . . ." Conn. Gen.Stat. § 31–275(10). Joint ventures also are employers under the Act. *See Doe v. Yale University*, 252 Conn. 641, 748 A.2d 834, 852–55 (2000). A joint venture exists "where two or more parties combine their property, money, efforts, skill or knowledge in some common undertaking." *Id.* at 853–54. Joint ventures are similar to partnerships, although the former usually involve a single transaction or course of transactions, while the latter exist for general business purposes. *See id.* at 854.

■ A worker can qualify as an "employee" to whom the Act applies in several ways, including when he has "entered into or works under any contract of service or apprenticeship with an employer." Conn. Gen.Stat. § 31–275(9)(A)(i). In contrast, independent contractors do not fall within the scope of the Act. *See Hanson v. Transportation Gen., Inc.*, 45 Conn.App. 441, 696

---

5. There appears to be no dispute that the defendants complied with the requirements of subsection (b) of the Act, which requires employers to have workers' compensation insurance or sufficient resources to pay such claims directly. *See* Conn. Gen.Stat. § 31–284(b).

A.2d 1026, 1029 (1997), *aff'd* 245 Conn. 613, 716 A.2d 857 (1998) (quoting *Chute v. Mobil Shipping & Trans. Co.*, 32 Conn.App. 16, 627 A.2d 956 (1993), *cert. denied*, 227 Conn. 919, 632 A.2d 688 (1993)). "The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work." *Id.* "It is not the fact of actual inference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." *Doe*, 748 A.2d at 858 (quoting *Tianti v. William Raveis Real Estate, Inc.*, 231 Conn. 690, 651 A.2d 1286, 1290 (1995) (citing *Latimer v. Administrator*, 216 Conn. 237, 579 A.2d 497, 503 (1990); *Caraher v. Sears, Roebuck & Co.*, 124 Conn. 409, 200 A. 324, 327 (1938)) (internal quotation marks omitted) (also discussing the factors that comprise the so-called "ABC test," codified at Conn. Gen.Stat. § 31–222(a)(1)(B)(ii), which is used to determine whether a service provided by an individual constitutes employment in the unemployment compensation context)). "For the purposes of workers' compensation, an independent contractor is defined as one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." *Chute*, 627 A.2d at 958 (citations omitted).

2. Employment Relationship in this Case

a. Existence of a Joint Venture or Partnership

██ American Wrecking and Seco argue that the exclusivity provision of the Act bars the estate's wrongful death claim against them because they both were the decedent's employer, as they operated as a joint venture.[6] In the alternative, they argue that they were a partnership, an organization also considered an employer under the Act. The estate contends that neither a joint venture nor a partnership existed, and thus the Act's bar against most common law tort claims does not apply to American Wrecking.

American Wrecking and Seco have presented substantial evidence that they operated as a joint venture on the Steel Point project by combining their property, money, efforts, and skills in a common undertaking. *See Doe* at 853–54. More specifically, according to Spector's affidavit, American Wrecking and Seco worked together to complete demolition projects, including Steel Point. Seco provided the financing for the purchase and lease of the equipment used by American Wrecking, and it administered the salaries and benefits of the employees of both corporations. For example, the decedent's W–2 forms list Seco as his employer, and his employee earnings record names Seco as the company who paid him. Spector also states in his affidavit that Seco paid for the worker's compensation policy that named American Wrecking as the insured. At the same time, American Wrecking held the contract to provide demolition services to IDM. According to that contract, American Wrecking was to be paid a total of $676,457 for the "[c]ompletion of the work set forth on Schedule 1 attached hereto (and made a part hereof) in a good and workmanlike manner"[7] and the completion of other tasks specified in a later agree-

6. There apparently is no dispute as to whether the decedent's injuries and death arose out of and in the course of the decedent's employment.

7. Schedule 1 has not been submitted to the Court, but it is undisputed that it concerned the Steel Point project.

ment. Spector explains that in entering that contract, he intended that the corporations would operate together to fulfill its terms, and that the two shared the goal of meeting contractors' requirements and earning profits. Further, the two corporations issued a joint "Safety Program" that numerous employees signed, including the decedent. This document includes the heading "Seco Corporation/American Wrecking Corporation" and lists several precautions that employees were instructed to follow.

The plaintiff argues that the two corporations were neither a joint venture nor a partnership because they never "entered into any State or Federal Recognized association of Partnership or Joint Venture as alleged" and because they were "two distinct and separate Corporations for all legal matters as supported by the separate contracts of the defendants and the separate incorporations of same." However, parties to a partnership or joint venture are not required to memorialize their relationship in the form of a written agreement. *See* Conn. Gen.Stat. § 34–314(a) ("[T]he association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership."); *Dolan v. Dolan*, 107 Conn. 342, 140 A. 745, 748 (1928) ("In a joint adventure it is not necessary that there be an express agreement, for the conduct of the parties and other circumstances will often justify the inference that such an agreement existed."). Further, the fact that the IDM contract named American Wrecking alone does not indicate that the two corporations did not operate as a joint venture.

American Wrecking, described as the "contracting arm" of the joint venture, physically completed the demolition work and supervised the employees at the site; Seco's responsibilities were administrative and financial.

Moreover, the plaintiff has produced no evidence in support of its position on these issues, relying instead upon conclusory statements and arguments. Under Fed. R.Civ.P. 56(e), a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial." As a result, summary judgment in favor of the defendants is appropriate. Seco and American Wrecking have presented substantial evidence that they operated as a joint venture, and no contrary evidence has been presented by the plaintiff. As a result, American Wrecking and Seco, a joint venture, are both considered the decedent's employer under the Act.[8]

b. Employee or Independent Contractor?

The plaintiff also contends that the decedent was an independent contractor, not an employee, and thus is not subject to the provisions of the Act.

American Wrecking and Seco have presented substantial evidence to show that the decedent functioned as an employee, not an independent contractor. For example, Seco has produced the decedent's employee earnings record which appears to

---

**8.** A partnership is defined as "the association of two or more persons to carry on as co-owners of a business for profit ... whether or not the persons intend to form a partnership." Conn. Gen.Stat. § 34–314. Based on this definition, it is not clear whether American Wrecking and Seco operate as a partnership, particularly given the fact that the two corporations share an owner. Nevertheless, this question is not material, as the existence of a joint venture is sufficient for the purposes of the Act.

cover the period from July 12, 1989, until his death. During this time, the decedent was paid on a weekly basis by Seco. The defendants also have provided Seco's W–2 forms relating to the decedent's employment for the years 1994, 1995, and 1996, which show that Seco withheld taxes for him during that time. Spector in his affidavit also states that "Seco paid Percy L. Richard's salary ..., paid taxes on his behalf and treated him in all respects as an employee of the Joint Venture." Spector Aff. at ¶ 6. Further, the affidavit of the decedent's supervisor, Frank Bartolotti, indicates that Bartolotti had the authority to control the decedent's assignments and the manner in which he performed them, factors which indicate that he was not an independent contractor. *See Hanson*, 696 A.2d at 1029. The plaintiff has not presented any evidence relating to this issue. Thus, based on the evidence in the record, the decedent functioned as an employee for the purposes of the Act and the plaintiff has not raised a genuine issue of material fact on this point.

### B. The "Willful and Intentional" Exception to the Act

#### 1. Relevant Law

■ The Connecticut Supreme Court has "consistently ... interpreted the exclusivity provision of the act, General Statutes § 31–284(a), as a total bar to common-law actions by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." *Suarez v. Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507, 510 (1994) (citing *Jett*, 425 A.2d at 1264) (hereinafter *"Suarez I"*). A corporate employer may be subject to common law tort liability for injuries resulting from an assault by another employee who "can be identified as the alter ego of the corporation, or [when] the corporation has directed or authorized the result." *Suarez v. Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838, 848 (1997) (quoting *Jett*, 425 A.2d at 1265) (hereinafter *"Suarez II"*). This theory applies when "the assailant is of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." *Mingachos*, 491 A.2d at 374 (citing *Jett*, 425 A.2d at 1265). However, "[i]t is inappropriate where the actor is merely a foreman or supervisor." *Suarez II*, 698 A.2d at 849 (quoting *Jett*, 425 A.2d at 1265).

■ Further, "[t]o bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted." *Mingachos*, 491 A.2d at 375. Thus, "[t]he common law liability of the employer cannot ... be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting injury." *Suarez II*, 698 A.2d at 851 (citation omitted). Instead, in determining whether the actor's conduct was designed to cause the injury that resulted, and thus whether the exception to the exclusivity of the act applies, an employee who is victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. *See id.* "Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act." *Id.*

### 2. Are the Plaintiff's Claims Excepted from the Act Because of Intentional Misconduct?

The defendants argue that the plaintiff's claim for wrongful death sounds in negligence and is therefore barred by the Act's exclusivity provision; the plaintiff maintains that the defendants' actions were intentional. However, the evidence presented by the defendants here indicates that the decedent's injuries and death were not intentionally caused him, and the plaintiff has produced no evidence that the defendants' actions were "designed to cause the injury that resulted." *Mingachos*, 491 A.2d at 375.

The defendants first point to the plaintiff's allegations in the third amended complaint as evidence that they did not act intentionally with respect to the decedent's death. The complaint includes several specific allegations of negligence, including the defendants' failure to provide a safe workplace, failure to warn about unsafe conditions, failure to have medical personnel on site, and failure to provide emergency care to the decedent after the accident. However, as the defendants argue, none of these allegations indicates that the defendants intended to cause Mr. Richard's death, or that its employees knew that his death was substantially certain to occur from their actions and omissions. *See Suarez II*, 698 A.2d at 851. Further, Bartolotti's affidavit indicates that he and the decedent together decided that it was safe to proceed with cutting the steel beams. The joint nature of this decision shows that neither Bartolotti-or anyone else-intentionally caused harm to the decedent.

The plaintiff argues that the negligence alleged in its third amended complaint was "wilful and malicious." It also points to a Citation and Notification of Penalty from the Occupational Safety and Heath Administration ("OSHA"), which found that American Wrecking committed "Willful" violations of OSHA regulations in connection with the incident at issue here.[9] The OSHA Citation and Notification of Penalty describes several omissions by American Wrecking that exposed workers to "serious physical harm and death." For example, it states that an adequate engineering survey of the building was not performed, structural-steel frames were not cleared of debris, and employees were allowed to

---

9. The defendants cite *Mingachos* for the proposition that violations of OSHA regulations, without more, cannot serve as the basis for civil claims avoiding the workers' compensation ban of Conn. Gen.Stat. § 31–284. In that opinion, the Connecticut Supreme Court stated,

> In the present appeal the plaintiff is really requesting that we extend judicially the *Jett* exception to § 31–284 to include injuries to employees resulting from "intentional," or "willful," or "reckless" violations by the employer of safety standards established pursuant to federal and state laws, such as OSHA. In the absence of any such legislative direction, we decline to do so for a number of reasons....

491 A.2d at 374. Thus, to the extent that the plaintiff's complaint is based merely on violations of OSHA regulations, it is deficient. However, in *Mingachos*, the court also considered the OSHA violations as evidence in determining whether the trial court properly granted the defendants' motion for summary judgment. It held that the trial court did not err in granting this motion when the only evidence of the defendants' intentional misconduct was the plaintiff's attorney's affidavit which described the employer's awareness of dangerous working conditions and referred to attached records of OSHA violations. *See id.* at 381. In particular, the court noted that the plaintiff did not dispute affidavits submitted by coemployees stating that they had no intent to injure the plaintiff. *See id.* Similarly, this Court will consider the OSHA violations as evidence of the defendant's intentional conduct. However, as explained above, these violations do not indicate that the defendants' behavior met the intentionality requirements of *Mingachos* and *Suarez II*.

work near weakened material. Finally, the estate argues that Bartolotti's affidavit and the defendants' motion for summary judgment indicate that Bartolotti knowingly and intentionally directed the decedent to proceed with cutting the steel beam, thereby bringing this claim within the scope of the exception to the Act.

Again, none of this shows that the decedent's injuries were intentionally caused him. *See Suarez II*, 698 A.2d at 851 (explaining that the exception does not apply to accidental injuries caused by "the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting injury"). Although the plaintiff's claims and the OSHA violations may describe negligent, grossly negligent, and even willful actions on the part of the defendants, they do not indicate that the defendants intended to cause injury to the decedent, or that they knew that his injuries or death would be substantially certain to occur as a result of their actions.[10] Similarly, even if Bartolotti solely instructed the decedent to proceed with cutting the steel beam, there is no evidence that he intended to cause injury to the decedent, or that he can be considered the alter ego of the defendants. *See Mingachos*, 491 A.2d at 374. In his affidavit, Bartolotti explains that he "did not think that Mr. Richards was likely to be injured by making the cuts he planned to make." Accordingly, because the plaintiff has not produced evidence that the decedent's injuries were intentionally caused him, the exception to the Act does not apply. As a result, the common law tort claim against American Wrecking and Seco in count one is barred.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment [Doc. # 106].

---

**10.** The plaintiff casts many of its allegations as "willful and malicious negligence." However, as the defendants point out, the plaintiff's complaint also alleges that the defendants' behavior was deficient because it failed to conform to a certain standard of care. The fact that the plaintiff chose to characterize its claims in this way indicates that it is alleging negligence, not reckless or intentional conduct. *See Brown v. Branford*, 12 Conn.App. 106, 529 A.2d 743 (1987) (determining that based on the complaint, a plaintiff who alleged "willful, wanton and intentional negligence," stated a cause of action for negligence). Further, even if the plaintiff had alleged a wilful and malicious act, this is not enough to avoid the exclusivity of the act because the plaintiff has not alleged that Richard's injuries and death were intentional. *See Mingachos*, 491 A.2d at 375–76. Moreover, the plaintiff has not produced evidence of such conduct, apart from the OSHA violations.