**Darren BYE and Claudine Bye, Plaintiffs,**

v.

**CIANBRO CORPORATION, Defendant.**

Civil Action No. 09–02052–WGY.

United States District Court, D. Connecticut.

June 24, 2013.

Jeffrey M. Cooper, Cooper Sevillano, LLC, Bridgeport, CT, for Plaintiffs.

James A. Mahar, Michael T. Ryan, Ryan Ryan Deluca LLP, Stamford, CT, for Defendant.

### MEMORANDUM AND ORDER

YOUNG [*], District Judge.

## I. INTRODUCTION

Darren Bye ("Bye") and his wife ("Mrs. Bye") (collectively, the "Byes") bring this suit for damages against his employer, Cianbro Corporation [1] ("Cianbro"), for injuries sustained by Bye in the course of his employment while performing repair work on a Connecticut bridge. Specifically, the Byes allege (1) that, given the conditions of the worksite, Cianbro knew that Bye's injuries were substantially certain and that, as a result, Bye properly may bring suit despite the otherwise governing rule of workers' compensation exclusivity with regard to remedies for employment-related injuries and (2) that Mrs. Bye ought be able to recover for loss of consortium due to Bye's injuries.[2] Cianbro has moved for summary judgment on both Bye's and Mrs. Bye's claims.

### A. Procedural Posture

The Byes initially filed a complaint in the Connecticut Superior Court on December 10, 2008. Notice Removal, Attach. 2, Compl., ECF No. 1–2. The case was removed to the District of Connecticut on December 15, 2009. Notice Removal, ECF No. 1. On September 1, 2010, the Byes amended their initial complaint,[3] Am. Compl., ECF No. 37, and on October 27, 2010, they filed a second amended complaint, Second Am. Compl., ECF No. 43.

On December 14, 2012, Cianbro filed a motion for summary judgment against the Byes' second amended complaint, appending to its motion a memorandum of law in support and a statement of undisputed facts. Def. Cianbro Corps.' Mot. Summ. J. ("Cianbro's Mot. Summ. J."), ECF No. 98; Cianbro's Mot. Summ. J., Attach. 1, Def. Cianbro Corps.' Mem. Law Supp. Mot. Summ. J. ("Cianbro's Mem."), ECF No. 98–1; Cianbro's Mot. Summ. J., Attach. 2, Local Rule 56(a)1 Statement ("Cianbro's SOF"), ECF No. 98–2. The Byes submitted a brief in opposition to Cianbro's motion on February 11, 2013. Pls.' Objection Def.'s Mot. Summ. J. ("Byes' Opp'n"), ECF No. 105. One week later, Cianbro filed a brief in reply to the Byes' opposition. Reply Pls.' Objection Def. Cianbro Corp.'s Mot. Summ. J., ECF No. 107. On February 27, 2013, the Byes responded to Cianbro's statement of undisputed facts and submitted their own statement of disputed facts. Pls.' Resp. Def.'s Local Rule 56(a)1 Statement & Pls.' Local

---

[*] Of the District of Massachusetts, sitting by designation. Order Transfer, Feb. 5, 2013, ECF No. 104.

[1] The State of Connecticut, the Connecticut Department of Transportation, the Connecticut Commissioner of Transportation, and a company formerly known as Tri–State Painting, Inc. ("Tri–State Painting") were initially parties to this action, but they have since been terminated. See Partial Stipulation Dismissal, ECF No. 89. Cianbro Corporation, therefore, remains as the sole defendant in this case.

[2] A third claim—one for negligence against Tri–State Painting—was rendered moot by virtue of Tri–State Painting's dismissal from this case.

[3] The Byes' first amended complaint was initially filed on August 31, 2010, Am. Compl., ECF No. 35, but a revised version was filed a day later, see Letter from Jeffrey M. Cooper to Judge Stefan R. Underhill (Aug. 31, 2010), ECF No. 36; Am. Compl., ECF No. 37.

Rule 56(a)2 Statement ("Byes' Resps. Cianbro's SOF" or "Byes' SOF"),[4] ECF No. 111.

## B. Undisputed Facts [5]

In 2004, the Connecticut Department of Transportation (the "DOT") resolved to undertake an extensive rehabilitation and repainting of the Washington Bridge (the "Bridge"), a bascule-type drawbridge spanning the Housatonic River that connects the towns of Milford and Stratford. Second Am. Compl. ¶¶ 3, 6. The DOT hired Cianbro, a construction and civil engineering company, as the general contractor for the project. *See id.* ¶ 7. In order to perform their work on the project, Cianbro employees were expected to access a series of electrical platforms and bascule pits situated underneath the roadway in the Bridge's bascule piers and to navigate a number of ladders. *Id.* ¶¶ 10–11.

The Bridge features two bascule pits, one of which is located on the structure's west side. *See id.* ¶¶ 12–13. The principal access point to the west bascule pit is through a hatchway on the Bridge's sidewalk, which leads to a small, concrete platform (reachable via a ladder approximately five feet in length) and two successively higher platforms (reachable via a ladder approximately twenty feet in length). *Id.* ¶¶ 13, 15. The second-level platform features a hinged metal trapdoor that covers a ladder that stretches ten feet down to the first-level platform. *Id.* ¶ 19. This trapdoor has to be fixed in an open position whenever someone seeks access to the west bascule pit via the second-level platform. *Id.* ¶¶ 20, 22. Because of the significant effort required to open and close the trapdoor, Cianbro had the trapdoor wired open. *Id.* ¶ 24. With the trapdoor wired open, however, there were no safeguards or so-called "fall protections" that would prevent tumbles from the second-level

---

**4.** Technically, both the Byes' responses to Cianbro's statement of undisputed facts and their own statement of disputed facts are found in the same document. *See* Pls.' Resp. Def.'s Local Rule 56(a)1 Statement & Pls.' Local Rule 56(a)2 Statement, ECF No. 111. The Byes essentially treat these two items independently, however, providing discontinuous paragraph references for each. In the interest of clarity and simplicity, this Court will cite to the respective portions of the Byes' responses to Cianbro's statement of undisputed facts and statement of disputed facts as though they originated from two separate documents. (For example, a citation to paragraph one of the Byes' responses to Cianbro's statement of undisputed facts—found on page one of the document—would read "Byes' Resps. Cianbro's SOF ¶ 1," whereas a citation to paragraph one of the Byes' statement of disputed facts—found on page four of the document—would read "Byes' SOF ¶ 1.")

**5.** Typically, the facts are to be drawn from the parties' Local Rule 56(a) statements, as well as from supporting affidavits and exhibits. *See, e.g., Saunders v. Vinton*, No. 3:12–cv–581 (MPS), 2013 WL 1729264, at *1 n. 1 (D.Conn. Apr. 22, 2013) (Shea, J.); *Doe v.*

*Norwich Free Acad.*, No. 3:10–cv–1171 (SRU), 2012 WL 5383343, at *1 (D.Conn. Oct. 31, 2012) (Underhill, J.). In what appears to have been a manual filing with the Court made on December 17, 2012—given that several of the documents delivered to chambers cannot be found on the docket made accessible through the District of Connecticut's Case Management/Electronic Case Files ("CM/ECF") system—Cianbro submitted an affidavit containing therein the Byes' second amended complaint, attached as an exhibit. *See* Aff. James A. Mahar, Esq., Ex. A, Second Am. Compl. Because Cianbro's statement of undisputed facts is lightly sketched and omits certain helpful details, the facts in this section of the memorandum come both from the parties' statement of facts and from those facts in the second amended complaint with which Cianbro has apparently taken no issue. For the sake of simplicity, all citations to the second amended complaint will be made with reference to the one that the Byes filed on October 27, 2010, not to the one attached to Cianbro's December 17, 2012, manually filed affidavit.

platform. *Id.* ¶ 25. To address this issue, Cianbro installed a temporary swing gate at the second-level platform that opened directly over a hole leading to the second-level platform ladder. *Id.* ¶ 27.

On the morning of December 11, 2006, Bye, a project engineer employed by Cianbro, was deployed to the Bridge to conduct quantity measurements[6] on the second-level platform of the Bridge's west bascule pit. *See* Cianbro's SOF ¶ 1; Second Am. Compl. ¶ 45. In the course of taking quantity measurements, Bye, on his hands and knees, backed up toward the ladder opening and inadvertently fell roughly ten feet into the west bascule pit. *See* Second Am. Compl. ¶¶ 48–51. At the time of Bye's fall, both the second-level trapdoor and the temporary swing gate were tied open. Cianbro's SOF ¶¶ 5–6; Second Am. Compl. ¶ 47. As a result of the fall, Bye suffered a number of serious injuries, including multiple fractures of the spine, ribs, and shoulder; neurogenic bowel and bladder issues; neuropathic pain; hyperglycemia; pleural effusion; and mental and emotional distress. *See* Second Am. Compl. ¶ 51. Bye applied for and subsequently received workers' compensation benefits. Cianbro's SOF ¶ 2.

## C. Federal Jurisdiction

This Court has diversity jurisdiction pursuant to 28 U.S.C. section 1332. The Byes are citizens of Maryland, whereas Cianbro is incorporated in Maine. Notice Removal ¶ 6. In addition, the amount in controversy exceeds $75,000. *Id.*

## II. ANALYSIS

### A. Standard of Review

A trial court may grant a motion for summary judgment only if the moving par-

ty demonstrates that there exists no genuine issue of material fact in the case. Fed. R.Civ.P. 56(a). In evaluating the merits of a summary judgment motion, the Court is free to review depositions, affidavits, interrogatory answers, and any other documents that have been filed in the case. *See* Fed.R.Civ.P. 56(c)(1)(A). The moving party carries the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the evidence provides a sufficient basis upon which a reasonable jury could find for the nonmoving party, then a "genuine" issue of fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is deemed "material" if it "might affect the outcome of the suit under the governing law." *Id.* In ruling on a summary judgment motion, the court is required to view the facts "in the light most favorable to the nonmoving party." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). While the court is obligated to review the record in its totality, "it must disregard all evidence favorable to the moving party that the jury is not required to believe," even if such evidence is unopposed by the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### B. Workers' Compensation Act Exclusivity

■ Section 31–284(a) of Connecticut's Workers' Compensation Act (the "Act"), Conn. Gen.Stat. §§ 31–275 to –355b, provides to an employee the exclusive remedy for any personal injuries suffered by said employee that "aris[e] out of and in the course of his employment." Conn. Gen.

---

6. "Quantity measurements" is an industry term; it describes measurements taken to cal-culate "handrail lineal footage and the square footage of ... floor grating." *Id.* ¶ 45.

Stat. § 31–284(a). This clause—commonly referred to as the Act's "exclusivity provision"—does not present an absolute bar to employee actions in tort, however. The Connecticut Supreme Court in *Jett v. Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979), recognized for the first time a narrow exception to the general rule against employee recovery of damages for on-the-job injuries where an employer intentionally causes or permits the injuries to take place. *See id.* at 218, 425 A.2d 1263. In its 1994 decision in *Suarez v. Dickmont Plastics Corp. (Suarez I)*, 229 Conn. 99, 639 A.2d 507 (1994), the court further refined the contours of this exception, declaring that an injurious event is intended by the employer if its actions leading up to the event are "done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." *Id.* at 108, 639 A.2d 507 (quoting 1 F. Harper & F. James, *Torts* § 3.3., at 216 (1956)) (internal quotation mark omitted). Three years later, in *Suarez v. Dickmont Plastics Corp. (Suarez II)*, 242 Conn. 255, 698 A.2d 838 (1997), the court recited its two-tiered exception in even more formal terms, stating that the Act's exclusivity provision may be overridden only if an injured employee is able to "prov[e] either that the employer actually intended to injure the [employee] (actual intent standard) or that the employer intentionally created a dangerous condition that made the [employee's] injuries substantially certain to occur (substantial certainty standard)." *Id.* at 257–58, 698 A.2d 838.

■ Bye seeks coverage only under the substantial-certainty exception to the Act's exclusivity provision, as articulated in *Suarez I* and *Suarez II*. Byes' Opp'n 6. To enjoy the benefits of this exception, an injured employee "must show more than that [a] defendant exhibited a lackadaisical or even cavalier attitude toward worker safety." *Sullivan v. Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 118, 889 A.2d 810 (2006) (alteration in original) (quoting *Stebbins v. Doncasters, Inc.*, 263 Conn. 231, 234, 819 A.2d 287 (2003) (per curiam)) (internal quotation marks omitted). In essence, the employee "must demonstrate that his employer *believed* that its conduct was substantially certain to cause the employee harm." *Id.*

Bye raises three primary arguments in favor of his position. Bye first contends that Cianbro, in tying open the trapdoor and swing gate at the second-level platform of the Bridge's west bascule pit, failed to follow not only established Occupational Safety and Health Administration ("OSHA") regulations but also its own internal safety policies, thereby exposing Bye to a substantially certain risk of injury. Byes' Opp'n 7–10. As purported confirmation of Cianbro's wrongdoing, Bye draws this Court's attention to an OSHA citation itemizing myriad safety violations at the Bridge worksite; a host of remedial measures implemented after the incident; and an abundance of fall protection protocols by which Cianbro, through its workplace safety guidelines, had promised to abide. *See* Byes' Opp'n 7–12; *see also* Byes' SOF ¶¶ 1–4, 12; Byes' Opp'n, Ex. G, Citation & Notification Penalty 9,[7] ECF No. 106-6 (commenting on the precariousness of leaving the trapdoor and swing gate tied open); Byes' Opp'n, Ex. H, Recordable Injury Lessons Learned 2–3,[8]

---

7. The CM/ECF page number printed in the header of the exhibit's pages is used in lieu of the exhibit's internal pagination because the exhibit is comprised of two separate documents with discontinuous pagination.

8. Because this exhibit lacks internal pagination, the page citation in the accompanying body text reflects the CM/ECF page number found in the header, not the page number as provided in the original document.

ECF No. 106–7 (including among the remedial measures taken "[a] daily inspection. and tagging program," the "install[ation] [of] springs on all the other gates," and the "install[ation] of fall blocks at the top of the ladder to tie off climbing up and down the ladder until the project [was] finished"); Byes' Opp'n, Ex. B, Cianbro Safety Bulletin—Fall Protection Program, ECF No. 106–1 (detailing Cianbro's fall protection program); Byes' Opp'n, Ex. C, CIANBRO Team Member Handbook & Calendar/2004 Edition 52, ECF No. 106–2 (noting, in a provision in Cianbro's employee handbook, that "[a]ll team members exposed to heights in excess of six feet are required to be tied off with approved personal protective equipment . . . or be protected from fall hazards by other approved measures"); Byes' Opp'n, Ex. D, Cianbro—Zero Injury Concept 6, ECF No. 106–3 (announcing Cianbro's "ZERO injury concept" and stating that "[m]anagement's top responsibility is to clearly set the expectation that ZERO [injuries] is the only acceptable [workplace safety] goal").[9]

■■■■ Bye appears to offer more than sufficient proof of negligent—or perhaps even reckless—conduct on the part of Cianbro in its management of the Bridge worksite. He has failed, however, to produce any persuasive evidence to suggest that Cianbro *intended* to cause him injury. *See Suarez II,* 242. Conn. at 279, 698 A.2d 838 ("[T]he common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other miscon-

duct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." (quoting 6 A. Larson & L. Larson, *Workmen's Compensation* § 68.13, at 13–12 to –13 (1997)) (internal quotation mark omitted)). It is a well-settled point of law in Connecticut that an employer's noncompliance with existing health and safety regulations or departure from informal workplace safety practices, standing alone, does not give rise to tort liability when an employee suffers injury properly attributable to such institutional shortcomings. *Motzer v. Haberli,* 300 Conn. 733, 745–46 (2011) (collecting cases). The fact that OSHA deemed the tied-open trapdoor and swing gate perilous to employee safety and assessed penalties against Cianbro in the wake of Bye's accident does not disturb this time-tested principle. *See Estate of Richard by Cunningham v. Am. Wrecking Corp.,* 134 F.Supp.2d 252, 261–62 (D.Conn.2001) (Droney, J.) (entering summary judgment against a demolition worker who suffered fatal injuries despite the fact that an OSHA citation and notification of penalty "found that [the defendant employer] committed 'Willful' violations of OSHA regulations in connection with the incident at issue" and that "several omissions by [the defendant employer] . . . exposed workers to 'serious physical harm and death,'" *id.* at 261). Moreover, remedial measures taken to correct or improve dangerous conditions that precipitated a workplace accident cannot be used retroactively as a means of imputing to an employer the purposeful intent to have the accident come to pass in the first instance. *Cf., e.g.,* Fed.R.Evid. 407 (disallowing the use of subsequent remedial measures to prove

---

9. Technically, these sources, as well as other exhibits submitted by the Byes, which were filed separately from the Byes' opposition, are located in a separate entry on the CM/ECF system and carry different designations on the docket. For the purposes of citation, however, this Court treats these exhibits as though they had been appended to and filed with the Byes' opposition.

negligence or culpable conduct and carving out an exception allowing for the admission of such evidence for the purpose of demonstrating the feasibility of precautionary measures, but only if feasibility is controverted); *Sullivan,* 277 Conn. at 119, 889 A.2d 810 ("[F]ailure to take effective remedial action does not translate to an affirmative intent to create an injury causing situation." (quoting *Sullivan v. Lake Compounce Theme Park, Inc.,* No. CV020172497S,· 2004 WL 1392842, at *3 (D. Conn. June 3, 2004) (Alvord, J.)) (internal quotation marks omitted)).

Bye also alleges that "Cianbro explicitly instructed it [sic] employees *not* to use personal protective equipment while working on the second level platform of the west bascule pier." Byes' Opp'n 12. This allegation is belied, however, by the Byes' own responses to Cianbro's statement of facts: the parties *agree* that Cianbro neither ordered Bye to conduct quantity measurements on the Bridge without the use of fall protection equipment nor forbade Bye from taking his own safety precautions. Cianbro's SOF ¶¶ 12, 15; Byes' Resps. Cianbro's SOF ¶¶ 12, 15. Courts have found the distinction between the presence versus the absence of employer directives to be meaningful in analogous situations. *Compare Buckman v. J.P. Carroll Constr. Co.,* No. CV 980576511S, 2000 WL 420705, at *4 (Conn.Super.Ct. Apr. 6, 2000) (Peck, J.) (denying a motion for summary judgment where issues of "whether the defendants required [the allegedly injured roofing employee] to work on the roof without scaffolding or other safety devices and in weather conditions that were inherently dangerous" remained in dispute), *with White v. Morgan Contracting, Inc.,* No. CV030826377, 2005 WL 1869041, at *2 (Conn.Super.Ct. July 14, 2005) (Booth, J.) (granting summary judgment against a roofer who fell while working on a renovation project because

"[t]here [ was] no indication that the employer ever instructed him to work without a harness or prohibited him from working with a harness"). Taking all intendments in Bye's favor, a reasonable jury could perhaps find that higher-ups at Cianbro told Bye that fall protection equipment would not in fact be necessary to complete the task at hand given the presence of the swing gate, as Bye so suggests. *See* Byes' SOF ¶ 8. Even so, this conduct hardly rises to the level of intentionality needed to place Bye's claim beyond the scope of the Act's exclusivity provision. *See Suarez I,* 229 Conn. at 112, 639 A.2d 507 ("[T]he intentional conduct in which the defendant engaged [must be] tantamount to a deliberate infliction of harm comparable to an intentional left jab to the chin." (quoting 2A A. Larson, *Workmen's Compensation* § 68.13, at 13–71 (1990)) (internal quotation marks omitted)). The restriction on employee tort recovery for unintentional workplace injuries serves as a kind of assured quid pro quo for the strict-liability regime to which employers are subject. *See* Richard A. Epstein, *The Historical Origins and Economic Structure of Workers' Compensation Law,* 16 Ga. L.Rev. 775, 800–03 (1982) (describing the "compensation· bargain" implicitly struck between employers and employees in workers' compensation schemes). Indeed, this is the very animating rationale that specifically informed the passage of Connecticut's Workers' Compensation Act itself. *Driscoll v. Gen. Nutrition Corp.,* 252 Conn. 215, 220–21, 752 A.2d 1069 (2000) (proclaiming that the Act's exclusivity provision "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation").

Finally, Bye contends that Mark Zagrobelny ("Zagrobelny"), a senior project en-

gineer with Cianbro and the movable bridge coordinator on the Bridge project, was aware that the swing gate was tied open prior to his accident, *see* Byes' Opp'n 9–10; *see also* Byes' Opp'n, Ex. E, Dep. Mark Zagrobelny 30:5–6, ECF No. 106–4; Cianbro's Mot. Summ. J., Ex. D, Dep. Darren Bye 152:1–10, ECF No. 98–5, and that Zagrobelny's expressed belief that this opening posed no danger to Cianbro employees was simply "disingenuous," Byes' Opp'n 10. To justify this statement, Bye advances something of a commonsensical argument: "Human experience teaches us that if you leave an unguarded hole with a drop of 10 feet on a construction site ..., we know that specific consequences (i.e., someone falling through the hole) are substantially certain to follow." *Id.* Bye's conclusory and primitive inference, however, does not suffice to impugn the integrity of Zagrobelny's sworn testimony. What is more, Bye himself admits that he was actually aware of the danger posed by the tied-open trapdoor and swing gate yet still—upon no command of Cianbro—proceeded on with his work. Cianbro's SOF ¶¶ 4–11, 13–14; Byes' Resps. Cianbro's SOF ¶¶ 4–11, 13–14. Such a choice proves fatal to his would-be employee tort action.

### C. Loss of Consortium

■ Loss of consortium is generally defined as "the loss of services, financial support, and the variety of intangible relations that exist between spouses living together in marriage." *Greci v. Parks,* 117

Conn.App. 658, 675, 980 A.2d 948 (2009) (quoting *Shegog v. Zabrecky,* 36 Conn.App. 737, 751, 654 A.2d 771 (1995)) (internal quotation mark omitted). "[E]ither spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third [party]." *Hopson v. St. Mary's Hosp.,* 176 Conn. 485, 496, 408 A.2d 260 (1979). Because a loss-of-consortium claim is merely derivative of a claim brought by an injured spouse against her employer, the former is barred as matter of law if the latter is ultimately unsuccessful on the merits. *See id.* at 494, 408 A.2d 260.

Because Bye has failed sufficiently to demonstrate his eligibility to claim coverage under the substantial-certainty exception, *see supra* section II.B, Mrs. Bye's loss-of-consortium claim cannot lie.[10]

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Cianbro's motion for summary judgment, ECF No. 98, in full.

**SO ORDERED.**

---

10. Bye's receipt of workers' compensation benefits provides yet another ground for denying Mrs. Bye's loss-of-consortium claim. *See* Conn. Gen.Stat. 52–555d ("No action with respect to any claim or cause of action for loss of consortium shall be brought by one spouse against an employer of the other spouse if such other spouse is entitled to receive, is receiving or has received benefits...."); *Dagraca v. Kowalsky Bros., Inc.,* Nos. X03CV000509931S, X03CV000509932S, 2005 WL 2650851, at *3 (Conn.Super.Ct. Sept. 28, 2005) (Peck, J.) ("[T]he plain language of [section 52–555d of the General Statutes of Connecticut] precludes recovery for loss of consortium against a spouse's employer when the spouse seeking such recovery has received benefits under the Worker's Compensation Act.").